RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0130p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

KEITH B. BARANSKI, d/b/a MAGUA INDUSTRIES
and PARS INTERNATIONAL CORPORATION,
                                    *Plaintiffs-Appellants,*

                    *v.*

FIFTEEN UNKNOWN AGENTS OF THE BUREAU OF
ALCOHOL, TOBACCO AND FIREARMS, BRIAN DIXON,
MICHAEL R. JOHNSON, DOUGLAS R. DAWSON,
MARK S. JAMES, KARL L. STANKOVIC, WILLIAM J.
HOOVER,
                                    *Defendants,*

UNITED STATES OF AMERICA,
                                    *Defendant-Appellee.*

Nos. 03-5582/5614

---

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 01-00398—John G. Heyburn II, Chief District Judge.

Argued: October 28, 2004

Decided and Filed: March 14, 2005

Before: KEITH, CLAY, and COOK, Circuit Judges.

---

### COUNSEL

**ARGUED:** Richard E. Gardiner, Fairfax, Virginia, Saeid Shafizadeh, Louisville, Kentucky, for Appellants. Terry M. Cushing, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee. **ON BRIEF:** Richard E. Gardiner, Fairfax, Virginia, Saeid Shafizadeh, Louisville, Kentucky, for Appellants. Terry M. Cushing, Candace G. Hill, John E. Kuhn, Jr., ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellee.

    CLAY, J., delivered the opinion of the court, in which KEITH, J., joined. COOK, J. (pp. 17-18), delivered a separate opinion concurring in part and dissenting in part.

1

---

### OPINION

---

CLAY, Circuit Judge.  Plaintiffs Keith B. Baranski and Pars International Corporation ("Pars") appeal the March 14, 2003 order of the district court holding that Defendants Fifteen Unknown Agents of the Bureau of Alcohol, Tobacco and Firearms ("ATF") and six named ATF agents were entitled to qualified immunity because (1) Plaintiffs suffered no Fourth Amendment violation by virtue of the alleged lack of particularity in the search warrant that Defendants used to seize hundreds of firearms and accessories owned by Baranski and stored by Pars; and (2) the facts did not show that Defendants violated a clearly established constitutional right pursuant to *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Plaintiffs also appeal the court's holding that Plaintiffs' action for damages pursuant to *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), would necessarily imply the invalidity of Baranski's criminal conviction related to the importation of the firearms and, therefore, must be dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994).  For the reasons that follow, we **REVERSE** the district court's holding with regard to qualified immunity and **AFFIRM, in part,** and **REVERSE, in part,** the district court's dismissal of Plaintiffs' *Bivens* claims pursuant to *Heck v. Humphrey*.

### I.

#### A.    Substantive Facts

Plaintiff Keith Baranski is a citizen of Ohio who does business as Magua Industries, which imports firearms and ammunition pursuant to a Federal Firearms License issued by the ATF. Plaintiff Pars, a Kentucky corporation, is a tenant of a multiple occupancy commercial structure located at 509 Cheyenne Avenue, Louisville, Kentucky.  The ATF has issued Pars a Federal Firearms License to import firearms and ammunition.  Pars is the custodian of a U.S. Customs High Security Bonded Warehouse ("CBW") located at 509 Cheyenne Avenue. The U.S. Customs Service has approved the warehouse for the storage of firearms covered by the National Firearms Act ("NFA"), 26 U.S.C. § 5845.  Pars routinely receives merchandise from various licensed importers of NFA firearms for storage at its warehouse, and Pars also performs customs broker services on behalf of other importers.  On various dates between October and December 2000, the Customs Service authorized Baranski to lawfully enter into the United States approximately 421 firearms and accessories from Bulgaria and Poland and store them in Pars's storage facility.

On January 16, 2001,  ATF Agents Brian Dixon and Michael Johnson, named defendants in this lawsuit, interrogated Baranski.  They asked about his relationship with another Federal Firearms Licensee, Vic's Gun Corporation, and then served him with a grand jury subpoena.

On April 10, 2001, Agent Johnson applied to U.S. Magistrate Judge Cleveland Gambill of the Western District of Kentucky for a search and seizure warrant for Pars's storage facility.  The application for search warrant described the place to be searched as follows:

> Pars International - Two story tan colored concrete construction building with narrow security windows.  Marked "509" above front glass door.  A sign indicating that the facility is a "Customs Bonded Warehouse" is posted on the door.  Located at 509 Cheyenne Avenue, Louisville, Kentucky.

The description of the person or property to be seized stated, "See Attached Affidavit."  As to the basis for the search and seizure, the application stated, "See Attached Affidavit."  As to the facts supporting a finding of probable cause, the application stated, "SEE attached Affidavit."

The attached affidavit was that of Agent Johnson, who indicated that he has been employed with the ATF for over 10 years and has participated in over 200 criminal firearm investigations. Johnson averred that, after a six-month investigation, there was probable cause to show that Plaintiff Baranski conspired with James Carmi and others to import law enforcement restricted machine guns for resale to Carmi and possibly others, in violation of 18 U.S.C. § 922(o); 26 U.S.C. § 5844; and 26 U.S.C. § 5861(1). Agent Johnson stated that the machine guns at issue were being stored at Pars, a Customs Bonded Warehouse, located at 509 Cheyenne Avenue, Louisville, Kentucky.

Johnson elaborated that Carmi, a previously convicted felon, assumed a false identity in order to operate a federally licensed firearms business called Vic's Gun Corporation. Pursuant to an ATF investigation of Vic's, Carmi was discovered with over 700 machine guns and firearms. Seized documents suggested a relationship between Carmi and Baranski. (Carmi subsequently was indicted in the United States District Court for the Eastern District of Missouri.)

Johnson's affidavit further explained that Baranski imported about 500 machine guns ostensibly as dealer samples for sale to law enforcement, which 18 U.S.C. § 922(o) permits. By January 2001, Baranski had removed at least 49 firearms from Pars's Custom Bonded Warehouse after submitting letters purportedly from the Farber, Missouri, police chief requesting a demonstration of the machine guns. The affidavit recounted an interview in which Baranski told Johnson that Carmi had agreed to pay Baranski for the firearms and that about 425 machine guns remained at Pars's warehouse. The affidavit also recounted Agent Johnson's interview with the Farber, Missouri, police chief who had explained that he had fraudulently composed the letters with the expectation of remuneration, that he had no knowledge of Baranski's firearms company, and that he had no intention of receiving a machine gun demonstration from Baranski. Documents seized from Carmi, and later Carmi himself, confirmed that Carmi had acted as an intercessor between Baranski and the police chief to obtain fraudulent police demonstration request letters in order to remove machine guns from Pars's warehouse.

Agent Johnson's affidavit concluded as follows:

> I have probable cause to believe that a large number of law enforcement restricted machineguns were fraudulently imported into the United States with the intention of further being distributed and sold to others involved in the conspiracy. I also have probable cause to believe that the machine guns in question are currently being stored at the Pars International Custom's Bonded warehouse, 509 Cheyenne Avenue, Louisville, Kentucky.

Later in the morning of April 10, 2001, Magistrate Judge Gambill granted Agent Johnson's application for a search warrant. The warrant, like the application, described the property or premises as follows:

> Pars International - Two story tan colored concrete construction building with narrow security windows. Marked "509" above front glass door. A sign indicating that the facility is a "Customs Bonded Warehouse" is posted on the door. Located at 509 Cheyenne Avenue, Louisville, Kentucky.

The warrant indicated that "there is now concealed a certain person or property, namely … See Attached Affidavit." The magistrate judge ordered the application for the search warrant and the supporting affidavit to be sealed.

On April 11, 2001, approximately 21 ATF agents, armed with the warrant, demanded entrance into 509 Cheyenne Avenue, where Pars's storage facility is located. The agents were greeted by Saeid Shafizadeh, who managed the facility. Shafizadeh requested to see the affidavit referenced in the search warrant but that was not attached to it. ATF Agent (and individual

defendant) Karl Stankovic responded that the affidavit was part of the court records, which were sealed. Agent Johnson allegedly stated that the warrant was for the entire two-story building and that unless Shafizadeh directed the agents to Baranski's property, they would search the entire building. Shafizadeh then asked Customs' Port Director, Frank Dupre, to read the warrant, and Dupre stated that, according to the warrant, the place to be searched was the Customs Bonded Warehouse. Customs Inspector James Thompson indicated that the warehouse was located in the basement of the building. Shafizadeh insisted that the warrant was defective without a description of what was to be seized and indicated that his acquiescence to let the agents enter the building was not voluntary.

Shafizadeh directed the agents to a secured vault in the basement of the building, which he identified as the Custom Bonded Warehouse portion of the building. Shafizadeh identified the section of the vault for firearms imported and owned by Baranski. Defendants seized Baranski's 372 firearms and 12 wooden crates containing firearm parts. The ATF agents did not search or inspect any other portion of the vault, the warehouse, or building.

On July 3, 2002, Baranski was indicted by a grand jury sitting in the United States District Court for the Eastern District of Missouri. Baranski was charged with conspiracy to import machine guns by making knowingly false entries on applications and other records, in violation of 26 U.S.C. § 5861(l). The indictment further pled criminal forfeiture of the machine guns that were the subject of the conspiracy count, pursuant to 28 U.S.C. § 2461(c).

After entertaining pre-trial motions in Baranski's criminal proceeding, the district court in Missouri granted in part Baranski's motion *in limine* concerning the 372 machine guns seized from Pars. The court held:

> The Court does not necessarily believe that the machine guns are relevant as evidence under Rule 401. Moreover, any probative value is outweighed by the danger of unfair prejudice. Finally, the display of 372 machine guns in the courtroom seems excessive. Therefore the Court will allow the display of several machine guns in the courtroom and/or photographs of same.

The court, however, denied Baranski's motion to suppress the machine guns and the 12 crates seized from Pars. The court held that Baranski had not demonstrated that the statements in Agent Johnson's affidavits were false or how the statements affected the probable cause determination. The court also found that the facts in the affidavit were sufficient to support probable cause for a conspiracy or that the seized weapons were imported with an intent to sell to one of the co-conspirators.

A jury found Baranski guilty as charged on the sole count of the indictment on November 18, 2002. On February 27, 2003, the court sentenced Baranski to 60 months' imprisonment followed by three years of supervised release. The district court also ordered the forfeiture of the 372 machine guns and 12 crates seized from Pars and incorporated the forfeiture order into Baranski's judgment of conviction.

As to the forfeiture, the court found: "Not only did the evidence clearly establish that the seized weapons were covered by the fraudulent law enforcement letters, but the Government's evidence at trial clearly established by at least a preponderance of the evidence that the defendant, as part of the conspiracy, intended on selling all of the weapons in the CBW to his co-conspirator, James Carmi." Thus, the court found that the guns and accessories described in the indictment were "property used or intended to be used in a manner to facilitate the commission of the crime for which defendant was convicted." The district court ordered the United States to publish notice of the order and its intent to dispose of the property in such a manner as the Secretary of Treasury may direct.

The order provided the right to any person, other than Baranski, to assert a legal interest in the property and petition for a hearing on his or her claim. Counsel for Pars received notice of the forfeiture and its right to assert a legal interest in the machine guns.

On September 23, 2003, the U.S. Court of Appeals for the Eighth Circuit affirmed Baranski's conviction and sentence. *United States v. Baranski*, No. 03-1575, 2003 WL 22176185 (8th Cir. Sep. 23, 2003). The court found that the district court had properly denied Baranski's motion to suppress "because there was probable cause for issuance of the warrant regardless of the alleged errors." *Id.* at *1 (citing *United States v. Briscoe*, 317 F.3d 906, 907 (8th Cir. 2003)). The court further held that "[t]he warrant should not have been suppressed for lack of particularity" because "the warrant referred to a sealed affidavit that described the weapons." *Id.* (citing *United States v. Cherna*, 184 F.3d 403, 412-14 (5th Cir. 1999)). The court added that, assuming the weapons should have been suppressed at trial, their admission was harmless error because the documents and testimony proved the government's case. *Id.* The court also affirmed the forfeiture order, finding that the evidence supported the district court's finding that the weapons were intended to be used to commit or facilitate the commission of the charged crime. *Id.* at *2 (citing 21 U.S.C. § 853(a)(2)).

## B.    Procedural History

On July 5, 2001, Plaintiffs Baranski and Pars International filed a complaint in federal district court against fifteen unknown named agents of the ATF, six named individual ATF agents, and the United States. Invoking the First, Fourth, and Fifth Amendments to the U.S. Constitution, Plaintiffs sought an order unsealing the affidavit of the search; an order suppressing the unlawfully seized evidence; an injunction compelling the return of seized firearms; and compensatory and punitive damages. The complaint alleged that Defendants' purported constitutional violations had "placed [Baranski] in an economically disadvantaged position in relation to his competitors who are directly benefitting from the actions of the defendants, and the absence of [Baranski] from [sic] marketplace," and had "impaired plaintiffs' ability to earn a lawful income from legitimate activities." Citing *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Plaintiffs alleged that Defendants violated their Fourth and Fifth Amendment rights under the U.S. Constitution. Plaintiffs also alleged state law claims for trespass, tort, and defamation.

On March 22, 2002, the district court granted the United States' motion to be substituted as the sole party defendant to Plaintiff's state law tort claims, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2679(d)(1), and to dismiss these claims against the individual named defendants. The court dismissed Plaintiffs' request for return of the seized firearms and ammunition on the ground that the government already had initiated forfeiture proceedings and Plaintiffs' were contesting the forfeiture. As such, Plaintiffs could not seek either return of the property or compensation for it through a separate federal action. The court also dismissed Plaintiffs' state law claims because they had not exhausted their administrative remedies under the Federal Tort Claims Act. The court denied the motion to dismiss Plaintiff's claim to unseal the affidavit supporting the search and seizure warrant, which was premised on alleged violations of the First and Fourth Amendments. The court also stayed Plaintiff's *Bivens* claims, premised on the Fourth and Fifth Amendments, against the named and unnamed agents for three months.

On November 22, 2002, the court lifted the stay on the case and granted Pars's motion to unseal the application and supporting affidavit of the search and seizure warrant in Baranski's criminal case. The court set a briefing schedule on Defendants' assertion of qualified immunity.

On March 14, 2003, the court found that Defendants were entitled to qualified immunity because (1) Plaintiffs suffered no Fourth Amendment violation by virtue of the alleged lack of particularity in the search warrant; and (2) the facts did not show that Defendants violated a clearly established constitutional right per *Harlow v. Fitzgerald*, *supra*. The court also found no basis in

Plaintiffs' Fifth Amendment due process claim stemming from the government's seizure of the machine guns and related accessories. Last, the court noted that a finding in favor of Plaintiffs on their *Bivens* action would undermine the finding of the magistrate judge in Baranski's criminal proceeding that the ATF agents had a good faith basis to believe that the warrant that they executed was valid even though it lacked specificity. The court also observed that the *Bivens* action would be "inconsistent with a federal judge's decision to forfeit these machine guns as being used in the commission of a federal conspiracy crime." As a collateral attack on Baranski's conviction and the various court rulings that led to it, a *Bivens* action would run afoul of *Heck v. Humphrey*, *supra*. The court dismissed all of Plaintiffs' claims with prejudice.

Plaintiffs now appeal the dismissal of their *Bivens* claims premised on alleged violations of the Fourth Amendment. Plaintiffs have not appealed the district court's dismissal of their state law claims for trespass, tort, and defamation or the court's dismissal of their Fifth Amendment *Bivens* claims; we therefore deem any challenge to the district court's dismissal of these claims waived.

## II.

The Fourth Amendment to the U.S. Constitution protects people and their houses, papers, and effects from "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Regarding the Fourth Amendment's particularity requirement, this Court has observed that "[g]eneral warrants, by failing to describe particularly the things to be seized, create a danger of unlimited discretion in the executing officer's determination of what is subject to seizure and a danger that items will be seized when the warrant refers to other items." *United States v. Savoca*, 761 F.2d 292, 298-99 (6th Cir. 1985) (citing *Andresen v. Maryland*, 427 U.S. 463, 480 (1976)). "A particular warrant also assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Groh v. Ramirez*, 540 U.S. 551, 561 (2004) (internal quotation marks and citations omitted). "The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Massachusetts v. Sheppard*, 468 U.S. 981, 988 n.5 (1984) (citations omitted).

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, *supra*, the plaintiff filed a complaint against agents of the Federal Bureau of Narcotics alleging that while acting under the color of federal authority, the agents conducted a warrantless search of the his apartment and arrested him without probable cause in violation of the Fourth Amendment. *Id.* at 389-90. The Supreme Court held that the plaintiff could recover damages from the federal agents for the injuries that they allegedly inflicted on him in violation of the Fourth Amendment. *Id.* at 392-97.

In the instant case, ATF Agent Johnson applied for a search warrant for Pars's storage facility and described the location of the facility as a tan, two-story building with a sign indicating that the facility is a "Customs Bonded Warehouse" and located at 509 Cheyenne Avenue, Louisville, Kentucky. Although the application did not describe the property to be seized, the attached affidavit, which the application incorporated by reference, referred to about 425 machine guns at Pars's Custom Bonded Warehouse. The warrant, which the magistrate judge executed, similarly described the location of the facility containing the items to be seized. Like the application, the warrant did not describe the items to be seized, but referred to an attached affidavit. A copy of the attached affidavit was not provided to Pars at the time of the search and seizure; only the warrant was provided because the magistrate judge had sealed the affidavit. Plaintiffs have alleged *Bivens* claims against Defendant ATF Agents, asserting that the warrant upon which they relied did not comport with the particularity requirement of the Fourth Amendment as to (1) the items to be seized and (2) the place to be searched.

## A.      Standard of Review

This Court reviews *de novo* the district court's ruling that a search warrant satisfied the Fourth Amendment's particularity requirement. *United States v. Gahagan*, 865 F.2d 1490, 1496 (6th Cir. 1989).

## B.      Particularity of the Items to Be Seized

The facts in this case are not materially distinguishable from the facts in *Groh v. Ramirez*, *supra*. There, Jeff Groh, an ATF agent, applied for a warrant to search Joseph Ramirez's ranch for a large stock of unregistered automatic rifles, grenades, a grenade launcher, and a rocket launcher. Groh supported his application for a warrant with a detailed affidavit that set forth the basis for his belief that the items were on the ranch. A magistrate judge signed the warrant form after reviewing the application and the affidavit. The warrant, however, was not specific regarding the place to be searched or the contraband to be seized. 540 U.S. at 554. The description of the property to be seized indicated only a description of the location where the property could be found, and the warrant did not incorporate by reference the itemized list contained in the application. *Id.* at 554-55. When the ATF agents searched Ramirez's home, they left him a copy of the search warrant, but not a copy of the application, which had been sealed. *Id.* at 555.

The Court held that the warrant "was plainly invalid." *Id.* at 557. The warrant was deficient as to the Fourth Amendment's particularity requirement because it provided no description of the type of evidence sought. *Id.* It did not describe the items to be seized at all, but only provided a description of the residence where the items allegedly could be found. *Id.*

The Court further held that "[t]he fact that the *application* adequately described the 'things to be seized' [did] not save the *warrant* from its facial invalidity." *Id.* (emphasis in original). "The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Id.* (citations omitted). The Court condoned the practice of construing a warrant in conjunction with a supporting application or affidavit, but only if (1) "the warrant uses appropriate words of incorporation" and (2) "the supporting document accompanies the warrant." *Id.* at 557-58 (citations omitted). The Court, however, refused to consider Groh's argument that the warrant incorporated the particulars in the application and affidavit because "the warrant did not incorporate other documents by reference, nor did either the affidavit or the application (which had been placed under seal) accompany the warrant." *Id.* at 558. Because Groh "did not have in his possession a warrant particularly describing the things he intended to seize, proceeding with the search was clearly 'unreasonable' under the Fourth Amendment." *Id.* at 563.

The Court further held that Groh was not entitled to qualified immunity for conducting a search based on the defective warrant. *Id.* at 563-64. "Given that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid." *Id.* (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982)). "[E]ven a cursory reading of the warrant … – perhaps just a simple glance – would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal." *Id.* at 564. And, because Groh prepared the invalid warrant, he could not argue that he reasonably relied on the magistrate judge's assurance that the warrant was sufficiently particular and, therefore, valid. *Id.*

The *Groh* decision makes it clear that the warrant that Agent Johnson procured for the search of Pars's warehouse was plainly invalid. As in *Groh*, the warrant was deficient as to the Fourth Amendment's particularity requirement because it provided no description of the type of evidence sought. It did not describe the items to be seized at all, referring only to the building where the items

allegedly could be found.  Indeed, in Baranski's criminal prosecution, the government conceded that the warrant lacked particularity as to the items to be seized.

The fact that Agent Johnson's application and affidavit adequately described the things to be seized (i.e., 425 machine guns) does not change the result because "[t]he Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Id.* at 557 (citations omitted).  Although the warrant used appropriate words of incorporation, the supporting documents that the warrant purported to incorporate did not accompany the warrant.  Because Agent Johnson "did not have in his possession a warrant particularly describing the things he intended to seize, proceeding with the search was clearly 'unreasonable' under the Fourth Amendment." *Id.* at 563.

Defendants counter that *Groh* does not provide any guidance on the circumstances under which an affidavit describing the items to be seized can be considered to have "accompanied" the warrant.  We disagree.  The Supreme Court explicitly held that a supporting affidavit must accompany the warrant and that the affidavit served on Ramirez did not accompany the warrant because the court had placed it under seal.  It was not sufficient for Agent Groh to be subjectively aware of the particulars contained in the affidavit; those particulars had to be communicated through the warrant to Ramirez. *See Groh*, 540 U.S. at 561 (noting that one purpose of the particularity requirement is to "assure[] the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search"); *cf. Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions [of the law enforcement officer] play no role in ordinary, probable-cause Fourth Amendment analysis.").  It follows, *a fortiori*, that it was not sufficient for Agent Johnson to be aware of the limits on his lawful authority under the warrant.  Those particulars had to be communicated to the manager of Pars through the warrant or an attachment to the warrant.  It is undisputed that they were not because, as in *Groh*, the affidavit that contained the particulars did not accompany the warrant at the time of the search and seizure.

In light of the recent *Groh* decision, we do not find Defendants' reliance on the Sixth Circuit's decisions in *United States v. Gahagan*, *supra*, and *Frisby v. United States,* 79 F.3d 29 (6th Cir. 1996) to be dispositive of Plaintiffs' underlying Fourth Amendment claim. *Gahagan*, like *Groh*, recognized that "[a] warrant that fails to describe the area to be searched with sufficient particularity can be cured by an accompanying affidavit if the affidavit is attached to the warrant and the warrant incorporates the affidavit by reference." *Gahagan*, 865 F.2d at 1497 (citations omitted).  In this case, it is undisputed that Agent Johnson's supporting affidavit was not attached to the warrant.  And, although the Court in *Gahagan* found that the particularity requirement was satisfied based on an unattached affidavit, in that case the affidavit was in one of the officer's vehicles and therefore was readily accessible. *Id.*  In this case, there is no dispute that the affidavit, which was under seal, was not at the scene of the search and seizure and, therefore, it was not, and could not have been, readily accessible.

*Gahagan* also is distinguishable because, there, the Court found that the warrant's description of the location to be searched was "less than complete," having stated the incorrect address *Id.* at 1498.  However, it was undisputed that the targeted property (a cabin) had no address marking and was located on the same property listed in the warrant. *Id.* at 1493-94.  Thus, the affidavit supporting the warrant, which did identify the targeted property, showed that "there was no risk … that a mistaken search of another premises was possible." *Id.* at 1498.  In this case, the warrant to seize property at Pars was not "less than complete"; it was totally incomplete.  It did not simply reflect an  inaccurate description of the items to be seized; it contained no description whatsoever.  The facts of this case are unlike *Gahagan*, where an unattached affidavit could be used to explain a description in the warrant, because the warrant for Baranski's property provided no description at all.

Finally, to the extent that *Gahagan* announced a rule that facts known by the executing officer and the approving magistrate judge, but not specifically stated in the affidavit or warrant,[1] automatically cures a facially defective warrant, we hold that *Groh* rejected such a rule. *Groh* categorically held that "[t]he Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Groh*, 540 U.S. at 557 (citations omitted). *See also id.* at 564 (holding that because the ATF Agent had prepared the invalid warrant, he could not argue that he reasonably relied on the magistrate judge's assurance that the warrant was sufficiently particular and, therefore, valid).

*Frisby* also is inapplicable to this case. In *Frisby*, the warrant incorporated by reference an "Attachment A," which listed the items to be seized with particularity. 79 F.3d at 31. At the time of the search, the officers "inadvertently" failed to provide a copy of Attachment A. *Id.*; *see also id.* at 32 (noting that there was "no allegation that the failure to serve plaintiff with a copy of Attachment A was either intentional or deliberate"). Consequently, the Court found no Fourth Amendment violation. *Id.* at 32. In the instant case, by contrast, Agent Johnson intentionally refused to provide a copy of his supporting affidavit, which described the particular items to be seized, because the affidavit was under seal. More fundamentally, Frisby did not challenge the validity of the warrant either as to the probable cause underlying the warrant "or the specificity with which the places to be searched or the things to be seized [were] enumerated." *Id.* at 31. Thus, we fail to see how *Frisby* has any bearing in this case, where the very issue is the validity of the warrant with regard to the specificity of the place to be searched and the things to be seized. For these reasons, we hold that the warrant upon which Defendants relied to search Pars's warehouse and seize Baranski's firearms and related accessories was constitutionally defective.

## C.   Particularity of the Place to Be Searched

The warrant described the street address and color of the building and referred to a sign on the building that stated "Customs Bonded Warehouse." Plaintiffs contend that the warrant was defective because its description of the building implied that the entire building was the object of the search. Plaintiffs point out that the warehouse does not occupy the entire building, only the basement.

"The test for determining whether the description in the warrant is sufficient to satisfy the particularity requirement … [has] two components: (1) whether the place to be searched is described with sufficient particularity as to enable the executing officers to locate and identify the premises with reasonable effort; and (2) whether there is reasonable probability that some other premises may be mistakenly searched." *Gahagan*, 865 F.2d at 1497 (citation omitted). Here, the description of the building assured that the executing officers could locate where the Customs Bonded Warehouse was with reasonable effort and to avoid mistakenly searching for the warehouse on some other premises. There is no evidence in this case that the agents searched anywhere other than the Customs Bonded Warehouse portion of the building that is identified in the warrant and to which

---

[1] *See id.* at 1499 ("[W]e find that when one of the executing officers is the affiant who describes the property to the judge, and the judge finds probable cause to search the property as described by the affiant, and the search is confined to the areas which the affiant described, then the search, in this case, is in compliance with the fourth amendment."). In an unpublished decision, this Court, following *Gahagan*, held that the Fourth Amendment was not violated when the warrant for firearms referred only to "attachment B" under the description of the items to be seized and attachment B was not served with the warrant because it was under seal. *See United States v. Pritchett*, 40 Fed. Appx. 901, 907 (6th Cir. July 9, 2002) (unpublished) (noting that the defendant was not prejudiced by the failure to receive attachment B with the warrant because (a) before the search began, the ATF agent told the defendant what they would be searching for; (b) the search was conducted in accordance with the warrant; (c) the officers provided the defendant with a receipt for the seized items; and (d) the affiant was in charge of executing the search, thereby minimizing the possibility of the search going beyond the scope of the warrant).

the manager of the Pars warehouse directed the agents.  Accordingly, although the warrant was defective on its face as to the items to be seized, it sufficiently described the place to be searched.

### D.    Qualified Immunity

#### 1.    Standard of review

This Court conducts a *de novo* review of the district court's determination that the ATF agents were entitled to qualified immunity. *Stemler v. City of Florence*, 126 F.3d 856, 866 (6th Cir. 1997) (citing *Barton v. Norrod*, 106 F.3d 1289, 1293 (6th Cir. 1997)).

#### 2.    Analysis

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, *supra*, 457 U.S. at 818.  "It is not necessary that the very action have been previously held unlawful but, given the preexisting law, the unlawfulness of the conduct must have been apparent." *Stemler*, 126 F.3d at 866.  "In determining whether an official is entitled to qualified immunity, this court asks whether the law was clearly established at the time of the alleged action." *Id.* (citing *Barton*, 106 F.3d at 1293).  A federal right is "clearly established" where "any official in his position would have understood that he was under an affirmative duty to refrain from such conduct." *Doe v. Bowles*, 254 F.3d 617, 620 (6th Cir. 2001) (internal quotation marks and citations omitted).  In determining whether the officers should have known their actions were unlawful, this Court looks primarily to decisions of the Supreme Court, this court, and other courts within our circuit. *Stemler*, 126 F.3d at 866 (citing *Cagle v. Gilley*, 957 F.2d 1347, 1348 (6th Cir. 1992)).

The recent *Groh* decision compels the conclusion that the Defendants[2] are not entitled to qualified immunity for conducting a search based on the defective warrant.  "Given that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid." *Groh*, 540 U.S. at 563-64 (citing *Harlow*, 457 U.S. at 818-19).  As in *Groh*, even "a cursory reading of the warrant … would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal." *Id.* at 564.  Moreover, because Agent Johnson prepared the invalid warrant, he cannot argue that he reasonably relied on the magistrate judge's assurance that the warrant was sufficiently particular and, therefore, valid. *Id.*

Defendants correctly point out that the district court in Baranski's criminal case (as affirmed by the Eighth Circuit) held that the "good-faith" exception[3] applied to their actions in executing the

---

[2]Defendants have not advanced separate qualified immunity arguments for each individual Defendant. Accordingly, we have treated them collectively for purposes of this analysis.

[3]Although the Fourth Amendment contains no provision expressly precluding the use of evidence obtained in reliance on an invalid warrant, *United States v. Leon*, 468 U.S. 897, 906 (1984), under the exclusionary rule, such evidence "cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347 (1974) (citations omitted).  Because the exclusionary rule is directed toward law enforcement officers, the Supreme Court has created a "good-faith" exception to the exclusionary rule, which permits the admission of evidence obtained in objectively reasonable, good-faith reliance on a subsequently invalidated search warrant. *Leon*, 468 U.S. at 919 n.20, 922; *see also id.* at 923 n.24 ("[O]ur good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.").  The good-faith exception would not apply where, for example, a warrant is "so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." *Id.* at 923.

warrant. The decision in *Groh*, however, undermines the legal basis for that holding and requires this Court to reject Defendants' assertion of qualified immunity because their reliance on such a facially defective warrant was not objectively reasonable. *See Groh*, 540 U.S. at 565 n.8 (noting that both the "good-faith" exception to the Fourth Amendment's general exclusionary rule and the concept of qualified immunity apply the same standard of objective reasonableness) (citing *Malley v. Briggs*, 475 U.S. 335, 344 (1986)). We therefore reverse the district court's holding that Defendants were entitled to qualified immunity.

As the dissent correctly notes, prior decisions of this Court condoned the practice of serving facially defective warrants that cross-reference sealed affidavits identifying the items to be seized with particularity. *See, e.g.*, discussion and cases cited at note 1, *supra*. We find it significant, however, that in *Groh* the Supreme Court denied qualified immunity for an agent who had specifically described the items to be seized in a sealed application for a warrant submitted to a magistrate, but not in the warrant itself, on the ground that executing the search with only the warrant in hand violated clearly established law as set forth in both the text of the Constitution and prior decisions of the Supreme Court. *See Groh*, 540 U.S. at 563-65 (noting that agent's search premised on a facially defective warrant plainly did not comply with the Fourth Amendment's particularity requirement, and the search was not justified by any of the exceptions that Supreme Court had crafted for warrantless searches). In so holding, the Supreme Court rejected the agent's argument, echoed in the United States' amicus brief, that qualified immunity was appropriate because "at the time petitioner acted, no controlling decision and indeed no decision by *any* court *anywhere* in the country had ruled that his actions were unlawful." *Petition for a Writ of Certiorari to the Ninth Circuit Court of Appeals* at 8, *Groh v. Ramirez*, No. 02-811 (Nov. 22, 2002) (available at 2002 WL 32101201) (emphasis in original); *see also Reply Brief for Petitioner* at 16, *Groh v. Ramirez*, No. 02-811 (Aug. 29, 2003) (available at 2003 WL 22068574) (arguing that denial of qualified immunity would mean that, at the time of the search, the agent should have "prefigure[d] that a warrant which refers to the underlying affidavit information provided to the magistrate cannot be supplemented by reference to that documentation, still an issue that is hotly controverted among the circuit courts"); *Brief for the United States as Amicus Curiae Supporting Petitioner* at 24-25, *Groh v. Ramirez*, No. 02-811 (May 21, 2003) (available at 2003 WL 21209371) (arguing that agent was entitled to qualified immunity because the rule that an affidavit must be both attached to the warrant and incorporated by reference in order to supplement the text of the warrant "has been rejected by most other circuits and its strict application is inconsistent in principle with numerous cases of this Court and the courts of appeals, including the Ninth Circuit, that have applied the particularity requirements of the Warrant Clause pragmatically, with regard to their purposes"). Accordingly, notwithstanding precedent from this Circuit that arguably justified Defendants' actions at the time, we hold that *Groh* mandates a denial of qualified immunity.

### III.

In *Heck v. Humphrey*, *supra*, the Supreme Court held that actions under 42 U.S.C. § 1983, like civil tort actions, are not appropriate vehicles for challenging the validity of outstanding criminal judgments. 512 U.S. at 486.

> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, [footnote omitted] in the absence of some other bar to the suit. [footnote omitted]

*Id.* at 487 (emphasis in original).  In dictum, the Supreme Court explained the limitation of its holding:

> [A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, *see Murray v. United States,* 487 U.S. 533, 539, 108 S. Ct. 2529, 2534, 101 L. Ed.2d 472 (1988), and especially harmless error, see *Arizona v. Fulminante,* 499 U.S. 279, 307-308, 111 S. Ct. 1246, 1263-1264, 113 L. Ed.2d 302 (1991), such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful.

*Id.* at 487 n.7 (emphasis in original).

The litigation bar of *Heck* applies with equal force to a civil rights action brought pursuant to *Bivens.  Robinson v. Jones*, 142 F.3d 905, 906-07 (6th Cir. 1998).  This Court applies a *de novo* standard of review to the district court's determination that Plaintiffs' *Bivens* claims are barred by *Heck v. Humphrey.  Id.* at 906.

A hypothetical judgment in this litigation that the search of Pars's warehouse and the seizure of Baranski's machine guns was unconstitutional would not "necessarily imply" the invalidity of Baranski's criminal conviction for conspiracy to illegally import machine guns.  The district court in Baranski's criminal case denied the motion to suppress the machine guns, but indicated that it did "not necessarily believe" that the machine guns were even relevant to the case.  On appeal, the Eighth Circuit held that "[t]he warrant should not have been suppressed for lack of particularity" because "the warrant referred to a sealed affidavit that described the weapons," *Baranski*, 2003 WL 22176185, at *1 (citing *United States v. Cherna*, 184 F.3d 403, 412-14 (5th Cir. 1999)), but added that even if the weapons should have been suppressed, their admission was harmless error because the documents and testimony proved the government's case.  *Id.*  Consequently, a judgment in this case that the search and seizure was unconstitutional would not *necessarily* imply the invalidity of Baranski's conviction.  *Cf. Heck*, 512 U.S. at 487 n.7 (opining that "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction … [b]ecause of doctrines like … harmless error[.]") (citations omitted).

The analysis does not end here, however, because *Heck* also requires dismissal of a lawsuit that would necessarily imply the invalidity of Baranski's sentence or "any outstanding criminal judgment" against him.  *Heck*, 512 U.S. at 487.  The district court entered an order of criminal forfeiture pursuant to the procedures set forth at 21 U.S.C. § 853 after finding that the guns and accessories described in the indictment were property used or intended to be used in a manner to facilitate the commission of the crime for which defendant was convicted.  *See* 26 U.S.C. § 5872(a) (providing that "[a]ny firearm involved in any violation of the provisions of this chapter shall be subject to seizure and forfeiture"); 28 U.S.C. § 2461(c) (providing that where forfeiture of property is authorized by statute but no specific statutory provision is made for criminal forfeiture upon conviction, the government may include the forfeiture in the indictment and upon conviction, the court shall order the forfeiture of the property in accordance with the procedures set forth in 21 U.S.C. § 853); 21 U.S.C. § 853 (providing that the court, "in imposing sentence," shall order criminal forfeiture as to, *inter alia*, property used or intended to facilitate the commission of a crime).  The Eighth Circuit affirmed the forfeiture order, holding that the evidence supported the district court's finding that the weapons were intended to be used to commit or facilitate the commission of the charged crime.  *Baranski*, 2003 WL 22176185, at *2 (citing 21 U.S.C. § 853(a)(2)).

Because "[f]orfeiture is an element of the sentence imposed following conviction," *Libretti v. United States*, 516 U.S. 29, 38-39 (1995) (emphasis omitted) (interpreting 21 U.S.C. § 853(a)),[4] Baranski seeks to impugn part of his criminal sentence by obtaining an injunction compelling the return of seized firearms, in direct contravention of the forfeiture order. Accordingly, *Heck* bars Baranski's *Bivens* claim to the extent he seeks return of the forfeited machine guns.

Baranski seeks more than just return of the weapons. His complaint requests damages resulting from the fact that the government's seizure of the weapons placed him "in an economically disadvantaged position in relation to his competitors who are directly benefitting from the actions of the defendants, and the absence of [Baranski] from the marketplace." (J.A. 22 (Complaint at ¶ 73)); *see also id.* ("The taking [of Baranski's machine guns in violation of the Fourth Amendment], has … impaired plaintiffs' ability to earn a lawful income from legitimate activities for which they have been licensed and authorized by the United States Treasury."); *id.* at 35 (prayer for relief at ¶ 5) (seeking general damages of $186,100). He also seeks compensatory damages for, *inter alia*, impairment of reputation and mental anguish, as well as punitive damages. *See id.* at 35 (prayer for relief at ¶ 7) (seeking compensatory damages for impairment of reputation, mental anguish, lost business opportunity as a result of Defendants' actions, and loss of use of property); *id.* (prayer for relief at ¶ 9) (seeking punitive damages for constitutional violations).

*Heck* bars Baranski's *Bivens* claim to the extent he seeks damages for the lost economic value of the weapons, whether measured in terms of their appraised value at the time of the unlawful seizure or the potential value Baranski could have received for the weapons had he been able to sell them on the open market at some future time. An award of such damages would directly contravene the forfeiture order, which is premised on the assumption that Baranski no longer has proper title to, and therefore no continuing economic interest in, those weapons. The same logic applies to Baranski's claim for damages premised on loss of use of the weapons. Because the forfeiture order determined that Baranski no longer owns the weapons, he cannot seek damages for loss of use of those weapons without running afoul of *Heck*.

Baranski's request for damages for his injured reputation and mental anguish, as well as his request for punitive damages, are different matters entirely. An award of such damages would not necessarily imply the invalidity of the criminal forfeiture order. The government knew about the existence and location of the forfeited weapons prior to their unlawful seizure from Pars's warehouse because Baranski had told ATF Agent Johnson about them during an interview. Defendants could have sought and obtained an order forfeiting those weapons (as well as Baranski's conviction) without seizing the weapons. Accordingly, the validity of the forfeiture order is not dependent upon the legality of the government's seizure of those weapons. *Cf. One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania,* 380 U.S. 693, 699-703 (1965) (reversing order forfeiting automobile used to transport untaxed liquor in violation of state law, because search of car potentially violated the Fourth Amendment and the state could not establish an illegal use of the car without using evidence resulting from the allegedly unconstitutional search). It follows that a judgment in this case that Defendants' seizure of the weapons violated Baranski's Fourth Amendment rights would not necessarily imply the validity of the forfeiture order. Further, no *Heck* problem arises, as long as Baranski is limited to recovering damages only for injuries that would not otherwise have arisen from the lawful forfeiture of his weapons. Although he cannot seek the replacement value of the weapons or lost profits due to his dispossession of the weapons, he can seek damages for impaired reputation and mental anguish as well as punitive damages attributable to the means by which Defendants effected the search and seizure. An award of damages for these

---

[4] *See also* FED. R. CRIM. P. 32.2(b)(3) ("At sentencing…the order of forfeiture becomes final as to the defendant and must be made a part of the sentence and be included in the judgment.").

injuries would not necessarily imply the invalidity of the forfeiture order, the validity of which is entirely independent of the method of the search and seizure.

Although Defendants also raise the *Heck* bar in opposition to Pars's *Bivens* claim, we need not resort to *Heck* to the extent Pars seeks the return of the forfeited machine guns. *See* J.A. 35 (Complaint, prayer for relief at ¶ 3) (requesting an order compelling the return of the machine guns to Pars's warehouse). Pars was notified of the forfeiture proceedings in Baranski's criminal case, and therefore Pars, as a third party, had the opportunity to assert a legal interest in Baranski's firearms and petition the district court for a hearing to adjudicate the validity of its asserted interest. *See* FED. R. CRIM. P. 32.2(c)(1); 21 U.S.C. § 853(n)(2). The district court below noted that Pars had filed a claim of ownership in Baranski's forfeiture proceedings in the Eastern District of Missouri, but there is no information in the Joint Appendix indicating what type of information, if any, Pars submitted to support its claim. Pars could have appealed an adverse decision in the forfeiture proceedings, separate and apart from Baranski's right to appeal his criminal conviction and sentence. *E.g.*, *United States v. Harris*, 246 F.3d 566, 567 (6th Cir. 2001); *see also* FED. R. CRIM. P. 32.2(c)(4) ("An ancillary proceeding is not part of sentencing."). There is no indication in the record that Pars ever took such an appeal, and as best as we can tell, the forfeiture order became final, giving the United States clear title to Baranski's firearms. FED. R. CRIM. P. 32.2(c)(2); 28 U.S.C. § 853(n)(7). Thus, Pars's claim for return of the weapons is foreclosed by operation of the forfeiture statute, and Pars cannot now bring a collateral cause of action to again lay claim on Baranski's firearms.

Pars's *Bivens* claim is not limited to a request for the return of the machine guns. Pars's complaint also seeks compensatory and punitive damages directly related to the government's seizure of those weapons. *See* J.A. 22 (Complaint at ¶ 73) ("The taking [of Baranski's machine guns in violation of the Fourth Amendment], has … impaired plaintiffs' ability to earn a lawful income from legitimate activities for which they have been licensed and authorized by the United States Treasury."); *id.* at 35 (prayer for relief at ¶ 5) (seeking general damages of $186,100); *id.* at 35 (prayer for relief at ¶ 7) (seeking compensatory damages for impairment of reputation, lost business opportunity as a result of Defendants' actions, and loss of use of property); *id.* at 35 (prayer for relief at ¶ 9) (seeking punitive damages for constitutional violations). Apart from Pars's asserted ownership interest in Baranski's firearms, Pars allegedly had contractual interests connected to those weapons as a bailee who expected compensation for storing them in its warehouse. Pars also allegedly had an interest in being free from unlawful governmental intrusions onto their property. Forfeiture proceedings, however, are not designed to compensate claimants for injuries to these types of interests. The forfeiture proceedings connected with Baranski's criminal case could address only the proper disposition of Baranski's firearms. *See* 26 U.S.C. § 5872(a). Pars would not have been permitted to intervene in those proceedings for any reason other than to stake a claim to those firearms. *See* 21 U.S.C. § 853(k)(1) (providing that "no party claiming an interest in property subject to forfeiture under … may… intervene in a trial or appeal of a criminal case involving the forfeiture of such property," other than to assert a legal interest in the property subject to forfeiture).

The question is whether *Heck* nevertheless bars Pars's *Bivens* claim for compensatory and punitive damages. *Heck* involved an action under 42 U.S.C. § 1983 against county prosecutors and a state police investigator, seeking damages for their allegedly unconstitutional conduct that led to the plaintiff's conviction. *Heck*, 512 U.S. at 479. The Court held that "when a state *prisoner* seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence[.]" *Id.* at 487 (emphasis added). The Court added that "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment *against the plaintiff*, the action should be allowed to proceed[.]" *Id.* (emphasis omitted and another emphasis added). The Court expressed particular concern over affording criminal defendants another opportunity to collaterally attack their criminal convictions. *Id.* at 484-85 ("This Court has long expressed … concerns for finality and consistency and has generally declined to expand opportunities for

collateral attack[.]") (citations omitted).  Pars, however, is not a prisoner or a former prisoner, and a successful litigation would not demonstrate the invalidity of any outstanding criminal judgment against Pars.  Thus, nothing in *Heck* contemplates extending the bar against civil damages actions to third parties like Pars, whose prior criminal judgments are not at issue.

Moreover, extending *Heck* to Pars would be fundamentally unfair.  As held above, Defendants searched Pars's warehouse in reliance on a facially defective search warrant, and their reliance was not objectively reasonable.  Yet, barring Pars's claim pursuant to *Heck* would leave Pars with effectively no remedy for the unconstitutional intrusion.  Although the constitutionality of the search was addressed by the courts of the Eighth Circuit in Baranski's criminal case, Pars had no opportunity to participate in the resolution of that issue.[5]  We are unaware of any statutory provision that would have afforded Pars the right to intervene in Baranski's criminal trial in order to join his suppression motion.  Even if Pars had been permitted to intervene, its constitutional claims for damages against the individual ATF agents could not have been adjudicated in that forum because the agents were not parties to Baranski's criminal proceeding.  We also question the efficacy and propriety of trying a criminal action simultaneously with an action for damages.  For these reasons, we hold that *Heck* does not bar Pars's *Bivens* claims for damages against Defendants.

As a purely factual matter, Pars's ability to recover damages flowing from the unlawful seizure of the weapons may be greatly circumscribed.  The weapons have been forfeited to the government, and that criminal judgment is unassailable.  Therefore, to the extent Pars seeks damages for loss of use of the weapons or lost storage costs attributable to their unlawful seizure, Pars's recovery is temporally limited by the inevitable (lawful) forfeiture of those weapons.  Pars also can seek compensatory damages for alleged injuries to its reputation and any other financial injury that flowed from the unlawful seizure, as long as the injuries can be distinguished from harm it inevitably would have suffered due to the subsequent, lawful forfeiture of Baranski's weapons.  Like Baranski, Pars may also seek punitive damages against Defendants for the manner in which they executed the search and seizure.  Given the state of the record, we express no opinion as to whether Pars or Baranski ultimately will be able to marshal sufficient evidence to prove a compensable injury or even to create a genuine issue of material fact that they suffered a compensable injury.  They may be entitled only to an award of nominal damages for their constitutional injuries.  Those are issues best left to the district court on remand.

Finally, we acknowledge that our holding today on the Fourth Amendment issue appears to be at odds with the Eighth Circuit's holding on the same set of operative facts.  Should Plaintiffs proceed to trial and prevail, Defendants (in their individual capacities) would be found to have flouted the Fourth Amendment, even though they (in their official capacities) previously were found to have acted lawfully.  We would note, however, that at the time the Eighth Circuit rendered its decision in *Baranski*, it did not have the benefit of the Supreme Court's *Groh* decision.  In any event, this Court's holding in the instant case is preferable to the alternative of leaving individuals and property owners who have suffered a patently unconstitutional intrusion without any remedy.  We therefore hold that an action for damages, as circumscribed above, would not necessarily demonstrate the invalidity of any criminal judgment and, consequently, is not barred by *Heck*.

---

[5]Conceivably, the prejudice to Pars would be even more severe if Baranski's criminal counsel had been ineffective, such as by failing to advance colorable arguments concerning the constitutionality of the search and seizure.  Indeed, if Baranski's attorney had failed to contest the search and seizure, the Fourth Amendment issue would not have been litigated at all.

**IV.**

For all the foregoing reasons, we **REVERSE** the district court dismissal of Plaintiffs' *Bivens* claims on qualified immunity grounds; **AFFIRM** the dismissal of Plaintiffs' *Bivens* claims to the extent they seek (a) return of the firearms that were forfeited after Baranski's criminal conviction or (b) damages attributable to the inevitable, lawful forfeiture of those firearms; and **REVERSE** the order of dismissal with respect to Plaintiffs' claims for compensatory damages that arose from Defendants' unlawful search and seizure, but that were not otherwise an inevitable result of the subsequent forfeiture.  We also **REVERSE** the dismissal of Plaintiffs' claims for punitive damages.

---

### CONCURRING IN PART, DISSENTING IN PART

---

COOK, Circuit Judge, concurring in part and dissenting in part.  Because I agree with the district court that qualified immunity supports dismissal of all plaintiffs' claims, I respectfully dissent from those portions of the majority's opinion that reverse the district court.

Even if the majority is correct in its conclusion that the warehouse search violated the Fourth Amendment in light of *Groh v. Ramirez*, I nevertheless maintain that Sixth-Circuit precedent sanctioning similar searches entitles the agents here to qualified immunity.

In *Groh*, the warrant neither described the items to be seized, nor cross-referenced a document that described those items.  540 U.S. 551, 554–55 (2004).  Thus, the agents had no basis to believe the warrant was valid.

Here, by contrast, the agents performed their search under a warrant cross-referencing a sealed affidavit—a practice this court has previously deemed reasonable.  *United States v. Pritchett*, 40 Fed. Appx. 901, 907 (6th Cir. 2002); *see also Frisby v. United States*, 79 F.3d 29, 32 (6th Cir. 1996) ("The Fourth Amendment does not necessarily require that government agents serve a warrant, or an attachment thereto, prior to initiating a search or seizing property."); *United States v. Gahagan*, 865 F.2d 1490, 1497 (6th Cir. 1989) ("[I]f the description contained in the warrant itself is inadequate, 'it is appropriate to look to the description appearing in the warrant application or affidavit *if* it is clear that the executing officers were in a position to be aided by the document . . . .'") (quoting 2 W. LaFave, *Search and Seizure* § 4.5(a) at 209 (2d ed. 1987)).  Even if *Groh* casts doubt on *Pritchett*'s result, the fact that a unanimous panel of this court reached that result establishes that the ATF agents' actions here did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

When faced with the question now before this court, the Third Circuit held that a district court erred when it denied an officer qualified immunity.  The court explained:

> Thus, while it was "clearly established" that warrants must be particular, the narrower and more appropriate question, *i.e.* whether it was clearly established that one has a constitutional right to be free from a search pursuant to a warrant based upon a sealed list of items to be seized, has not heretofore been answered, at least in those terms.

*Bartholomew v. Pennsylvania*, 221 F.3d 425, 429 (3d Cir. 2000).

The Fifth Circuit reached the same conclusion in the context of affirming the denial of a motion to suppress.  In *United States v. Cherna*, the court held that because it was "not entirely clear from circuit precedent that the affidavit must be physically attached to the warrant or served on the defendant," the officers who executed the warrant could "reasonably rely on the magistrate judge's issuance of the warrant, even though he simultaneously sealed the affidavit on which it was based."  184 F.3d 403, 412–13 (5th Cir. 1999).[1]

---

[1] Although *Cherna* involved the application of the good-faith exception to the exclusionary rule, its holding is relevant to the civil case presented here because "'the same standard of objective reasonableness that we appl[y] in the context of a suppression hearing in *Leon* defines the qualified immunity accorded an officer.'"  *Groh*, 540 U.S. at 565 n.8 (quoting *Malley v. Briggs*, 475 U.S. 335, 344 (1986)).

The case for qualified immunity is even stronger here than in *Bartholomew* or *Cherna* because this court's opinion in *Pritchett* explicitly approved a search executed under a warrant that cross-referenced a sealed affidavit. I would therefore affirm the district court's order dismissing plaintiffs' complaints.