

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-14-2005

# Gibson v. NJ Dept Law & Pub

Precedential or Non-Precedential: Precedential

Docket No. 04-1847

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Gibson v. NJ Dept Law & Pub" (2005). *2005 Decisions.* Paper 921.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/921

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 04-1847
_____

EMORY E. GIBSON, JR.

Appellant

v.

SUPERINTENDENT OF NEW JERSEY DEPARTMENT
OF LAW AND
PUBLIC SAFETY-DIVISION OF STATE POLICE; NEW
JERSEY TURNPIKE AUTHORITY; SEAN REILLY; J.W.
PENNYPACKER; PETER VERNIERO; RONALD
SUSSWEIN; JOHN FAHY; GEORGE ROVER; JOHN
DOES 1-10;
TREASURER STATE OF NEW JERSEY

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 02-cv-05470)
District Judge: Honorable Robert B. Kugler
_____

Argued February 11, 2005

Before: BARRY, FUENTES, and VAN ANTWERPEN,
<u>Circuit Judges</u>

(Filed: June 14, 2005 )

David Rudovsky (Argued)
Kairys, Rudovsky, Epstein & Messing
924 Cherry Street
Suite 500
Philadelphia, PA 19107

William H. Buckman
714 East Main Street
Suite 1B
Moorestown, NJ  08057

Counsel for Appellant

James H. Martin (Argued)
Peter C. Harvey, Attorney General of New Jersey
Patrick DeAlmeida, Assistant Attorney General - Of Counsel
Robert P. Shane, Deputy Attorney General
Richard J. Hughes Justice Complex
P.O. Box 112
Trenton, NJ 08625

Counsel for Appellees Verniero, Susswein,
Fahy, Rover, Pennypacker and Reilly

John F. Hipp
Spadoro & Hilson
90 Woodbridge Center Drive
Suite 610
Woodbridge, NJ 07095

Counsel for Appellee New Jersey Turnpike

_____

OPINION[1]

_____

VAN ANTWERPEN, <u>Circuit Judge</u>

Emory Gibson, Jr. appeals from two orders of the District Court which effectively dismissed his § 1983 action in its entirety. According to Gibson, in 1992 he was traveling on the New Jersey Turnpike when he was unlawfully stopped, searched and arrested by two New Jersey State Police Troopers. Gibson alleges that the stop and search were part of a pattern of racially discriminatory law enforcement practices undertaken by the New Jersey State Police. Ten years after his initial stop and eight years after his conviction, Gibson was released from prison after newly obtained

_____

[1] This Opinion represents the Opinion of the Court on all issues except the discussion of the Fourth Amendment claims in Part III.A. The Opinion of the Court on those issues is contained in the Opinion of Judge Fuentes filed herewith (hereinafter referred to as "Judge Fuentes's Opinion").

evidence suggested that his initial stop was tainted by racial animus. He subsequently brought this action against the New Jersey State Police ("NJSP") Superintendent;[2] J.W. Pennypacker and Sean Reilly,[3] the individual NJSP Troopers who originally arrested him; former New Jersey Attorney General Peter Verniero; former Deputy Attorneys General Ronald Susswein, John Fahy, and George Rover;[4] the New Jersey Turnpike Authority; the Treasurer of New Jersey; and several unnamed "John Doe" individuals who allegedly aided in the illegal search or the suppression of evidence.

In federal claims brought under 42 U.S.C. §§ 1983 and 1985, Gibson alleged that the defendants violated his right of access to the courts, his Fourth Amendment right to freedom from illegal search and seizure, and his Fourteenth Amendment right to equal protection under the law. He also alleges that the defendants conspired to violate these rights and conspired against him on account of his race. Additionally, Gibson brought several claims under state law. The District Court dismissed all of the claims as set forth below.

---

[2] The claim against the Superintendent was for injunctive relief only.

[3] J.W. Pennypacker and Sean Reilly are collectively referred to as "the Troopers."

[4] We refer to Peter Verniero, Ronald Susswein, John Fahy, and George Rover collectively as the "Attorney General defendants."

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are taken from Gibson's Complaint.  Because we are reviewing the grant of a motion to dismiss, we take these allegations as true and view them in a light most favorable to the appellant.  Christopher v. Harbury, 536 U.S. 403, 406 (2002).

Emory Gibson, Jr. is an African-American male.  On October 28, 1992, Gibson was sitting in the rear seat of a vehicle occupied by two other African-American men, traveling southbound on the New Jersey Turnpike.  At approximately 4:20 a.m., New Jersey State Police Troopers Pennypacker and Reilly pulled their marked NJSP cruiser behind the car in which Gibson was traveling and activated the cruiser's warning lights; the driver promptly pulled over.  Without a warrant, the Troopers searched the vehicle and then searched and arrested Gibson.  Gibson and the other occupants of the vehicle were charged with various offenses after the Troopers discovered illegal drugs in the car.  Gibson alleges that the Troopers stopped the car and conducted the search without probable cause.

Gibson was tried on April 20 and 21, 1994.  He was found guilty on two counts of drug-related offenses and sentenced to fifty years in prison.  At trial, the prosecution relied on the testimony of Troopers Pennypacker and Reilly, as well as Dennis Tully, who testified as an expert on drug interdiction and valuation.  According to Gibson, impeachment evidence existed at that time which showed that

Trooper Tully had a "monthly African American arrest rate on the Turnpike." (Appellant App. at A–93.)

In 1996, the Superior Court of New Jersey in <u>State v. Soto</u>, 734 A.2d 350, 360 (N.J. Super. Ct. Law Div. 1996), determined that NJSP Troopers were racially profiling drivers on the New Jersey Turnpike and targeting African-Americans for stops. Citing <u>Soto</u>, Gibson filed a petition for post-conviction relief and requested discovery on February 18, 1999. On February 8, 2000, the Superior Court, Law Division, denied the request for post-conviction relief, in part because Gibson did not allege sufficient evidence of racial profiling or the illegality of his stop and arrest.

Later, on January 29, 2002, the Superior Court of New Jersey, Appellate Division, reversed Gibson's conviction because exculpatory material uncovered in November 2000 tended to show that he was illegally stopped and arrested. On April 19, 2002, Gibson's Motion to Dismiss and Vacate the Conviction of Plaintiff was granted because there was a colorable basis to believe that Gibson was stopped and arrested as a result of unlawful racial profiling.

On November 14, 2002, Gibson filed a Complaint in the United States District Court for the District of New Jersey, in which he made six claims. Counts One, Two and Three were brought under 42 U.S.C. § 1983. In Count One, Gibson claimed that the defendants' unconstitutional acts denied him effective access to the courts and resulted in his unconstitutional conviction and imprisonment. In Count Two, he sought injunctive relief from the NJSP

6

Superintendent,[5] and in Count Three, he alleged that the defendants "conspired to violate Plaintiff's civil rights, namely the rights to meaningful access to the courts and the right to be free from unconstitutional conviction and imprisonment." (Appellant App. at A-103.) In Count Four, Gibson alleged that the defendants were liable under 42 U.S.C. § 1985 for conspiring "to violate the civil rights of Plaintiff herein based on his race." (Id. at A-103 to A-104.) Counts Five and Seven (there was no Count Six) were state law claims.

Appellees moved to dismiss all of the counts, arguing that they were time-barred, and that several of the defendants were entitled to Eleventh Amendment immunity, prosecutorial immunity and qualified immunity. On December 12, 2003, the District Court dismissed as time-barred Gibson's "constitutional claims for selective enforcement and failure to train (as well as any claims that reasonably can be construed to plead violations of the Fourth Amendment and malicious prosecution)." (Appellant App. at A-36.) The District Court also dismissed the claim against the defendant Treasurer of New Jersey and ordered further briefing and argument on the issue of qualified immunity as to the surviving claims. On February 24, 2004, the District Court dismissed the remaining claims. Gibson timely appealed.

---

[5] Gibson's counsel stated at oral argument that they are no longer pursuing this claim.

Consistent with this opinion and the Judge Fuentes's Opinion, we will reverse, and allow Gibson to proceed with his claims brought under 42 U.S.C. § 1983 in Count One alleging that the Troopers unconstitutionally searched and seized Gibson in violation of the Fourth Amendment, and subjected him to selective enforcement of the laws in violation of the Equal Protection Clause of the Fourteenth Amendment. We will also reinstate the 42 U.S.C. §§ 1983 and 1985 conspiracy claims in Counts Three and Four, and the state law claims in Counts Five and Seven.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (2005). This Court has jurisdiction over the final order and judgment pursuant to 28 U.S.C. § 1291 (2005). We exercise plenary review over both the District Court's dismissal of a claim on statute of limitations grounds under Fed. R. Civ. P. 12(b)(6) and its grant of qualified immunity. Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001).

## III. ANALYSIS

The nature of Gibson's multiple claims in Count One is somewhat difficult to ascertain so we begin by examining the Complaint.[6] Count One was brought under 42 U.S.C. §

---

[6] Count One of Gibson's Complaint states in its entirety:

81. Defendants, under the color of state law, *deprived*

8

*Plaintiff of his constitutional and civil right to meaningful access to the courts*, derived from Article IV, the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, *and the right to be free from an unconstitutional conviction and imprisonment* by, among other things:

- Detaining Plaintiff without probable cause;
- Searching and seizing the car Plaintiff was in without probable cause;
- Searching Plaintiff without probable cause;
- Arresting Plaintiff without probable cause;
- Falsely imprisoning Plaintiff;
- Improperly denying Plaintiff access to fair and meaningful judicial proceedings during his criminal trial, subsequent post-conviction proceedings and separate civil suits by suppressing evidence beneficial to Plaintiff in violation of Brady v. Maryland, similar state law and ethical duties;
- Depriving Plaintiff of his constitutional right to equal protection of the laws;
- Imprisoning Plaintiff unconstitutionally for a charge later vacated by motion of the State;
- Failing to train subordinates;
- Failing to supervise/control subordinates;
- Failing to correct the

9

1983 which provides a cause of action against a person who,

> unconstitutional/discriminatory practices of subordinates;
> – Continually condoning and ratifying a history of unconstitutional/discriminatory acts despite numerous allegations over the years of discrimination based on race;
> – Improperly screening, hiring, training, supervising, disciplining and retaining dangerous police officers.

82. The above acts constitute a violation of the Civil Rights Act, 42 U.S.C. § 1983 for a violation of one's civil and constitutional rights under the color of State law.

83. But for the Defendants' unlawful acts, Plaintiff would not have been denied meaningful access to the courts in his criminal proceedings and post-conviction relief proceedings; and would have been able to bring a civil cause of action against Defendants for Plaintiff's civil rights violations.

84. As a direct result of Defendants' unlawful acts which denied Plaintiff his right to access the courts, Plaintiff cannot seek remedy by way of causes of action mentioned in the previous paragraph since they are either time barred or moot.

85. As a proximate result of the aforementioned acts, Plaintiff has been damaged and has suffered severe emotional injuries, including mental distress and anguish.

(Appellant App. at A-100 to A-103) (emphasis added.)

10

acting under color of state law, deprives another of a constitutional or federal right. Thus, to state a claim under § 1983, Gibson must indicate: (1) of what constitutional or federal right he was deprived, and (2) how he was deprived of that right under color of state law. 42 U.S.C. § 1983 (2005); Basista v. Weir, 340 F.2d 74, 79 (3d Cir. 1965).

The first step in evaluating a § 1983 claim is to identify the specific constitutional right infringed. Albright v. Oliver, 510 U.S. 266, 271 (1994) (Rehnquist, C.J., plurality opinion). It appears that in Count One, Gibson's Complaint alleges two main claims of constitutional deprivation: (1) defendants denied Gibson access to the courts by suppressing exculpatory information, and (2) defendants violated Gibson's "right to be free from an unconstitutional conviction and imprisonment." (Appellant App. at A-100 to A-101.) The Complaint then alleges a litany of constitutional violations which underlie the main claims. Id. at A-101 to A-102.

The main claim of denial of access to the courts is well recognized and actionable. Christopher, 536 U.S. at 415 n.12. However, standing alone without more supporting detail, Gibson's other main claims concerning his right to be free from unconstitutional conviction and imprisonment[7] appear to

---

[7] At the outset, we note that Gibson was not pursuing a malicious prosecution claim. (Appellant App. at A-22). It appears that Gibson may have simply quoted the phrase "unconstitutional conviction or imprisonment" from the Supreme Court's holding in Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), which held that "*to recover damages for*

be more in the nature of legal conclusions or merely a description of the type of harm Gibson allegedly suffered. Recognizing this, the District Court read Count One of the Complaint as alleging a denial of access to the courts claim, as well as individual claims under the Fourth and Fourteenth Amendments. (Appellant App. at A-20 to A-28.) Specifically, Gibson claimed that his constitutional rights were violated: (A) when Troopers Pennypacker and Reilly searched and seized Gibson on the New Jersey Turnpike in violation of the Fourth Amendment, (B) when the Troopers racially profiled Gibson and thereby subjected him to

_allegedly unconstitutional conviction or imprisonment_, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." (footnote omitted) (emphasis added).

As noted _infra_, Heck holds that the statute of limitations on certain claims does not run until the underlying conviction is set aside. However, Gibson cannot avoid the statute of limitations applicable to § 1983 claims not covered by Heck by merely cloaking such claims in the "right to be free from an unconstitutional conviction and imprisonment." With the possible exception of malicious prosecution claims, such cloaking would, in effect, nullify the statute of limitations for all of Gibson's § 1983 claims, and we believe this is why the District Court read the Complaint as it did.

discriminatory enforcement of the law in violation of the Equal Protection Clause of the Fourteenth Amendment, (C) when the Troopers and Attorney General defendants denied him effective access to the courts by suppressing exculpatory evidence, and (D) when the NJSP and the New Jersey Turnpike Authority ("NJTA") failed to properly train and discipline the Troopers in question. Id. The parties did not dispute this characterization of the Complaint in their briefs or at oral argument, thus we will interpret the Complaint in this way.

## A. **Fourth Amendment Claims**

We begin by addressing Gibson's claim that the Troopers violated his Fourth Amendment rights.[8] The District Court concluded that all of the various ways by which Gibson alleges his Fourth Amendment rights were violated were barred by the statute of limitations.

An action brought under 42 U.S.C. § 1983 is subject to

---

[8] The Fourth Amendment states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

13

the state statute of limitations that governs actions for personal injury. Cito v. Bridgewater Township Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989). "In New Jersey that statute is N.J.S.A. 2A: 14-2, which provides that an action for an injury to the person caused by a wrongful act, neglect, or default, must be convened within two years of accrual of the cause of action." Id. (quoting Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987)) (internal quotation marks omitted). Although state law governs the limitations period, it is federal law that governs the accrual of § 1983 claims. Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998).

Generally, "the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." Id. at 126 (quoting Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991)) (internal quotation marks omitted). However, this rule does not apply when a plaintiff brings a § 1983 action that, if successful, would demonstrate that the plaintiff's underlying criminal conviction or imprisonment is invalid. Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). In such a situation, no cause of action arises until the conviction or sentence is invalidated, and the statute of limitations does not begin to run until the time of such invalidation. Id. at 489. In the case before us, the arrest, trial and other multiple alleged illegal acts all occurred more than two years before this suit was brought, and therefore all would be barred by the two-year statute of limitations. The dispute between the parties is whether or not these claims are saved from being untimely because they fall under the Heck delayed accrual rule, and did not accrue until Gibson's conviction was set

14

aside in 2002.

In <u>Heck v. Humphrey</u>, Heck brought a § 1983 suit while his criminal appeal was pending. <u>Id</u>. at 479. Heck alleged numerous constitutional violations in the conduct of his trial, and requested compensatory and punitive money damages, but no injunctive relief. <u>Id</u>. The Supreme Court concluded that such a claim was not cognizable under § 1983 until Heck's conviction or sentence had been invalidated, not because there was an exhaustion requirement, but simply because no claim existed until that time. <u>Id</u>. at 489. As the Court explained, "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." <u>Id</u>. at 486-87 (footnote omitted).

Nevertheless, the Supreme Court in <u>Heck</u> was careful to explain that not all constitutional claims arising from an arrest and prosecution are the kind that are subject to the deferred accrual rule. Some claims would not necessarily invalidate a conviction. The Court laid particular emphasis on Fourth Amendment claims in footnote seven, explaining:

> For example, a suit for damages attributable to an
> allegedly unreasonable search may lie even if the
> challenged search produced evidence that was

15

introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, see Murray v. United States, 487 U.S. 533, 539 (1988), and especially harmless error, see Arizona v. Fulminante, 499 U.S. 279, 307-308 (1991), such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful. In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, see Memphis Community School Dist. v. Stachura, 477 U.S. 299, 308 (1986), which, we hold today, does *not* encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned).

Heck, 512 U.S. at 487.

This Court dealt with the applicability of Heck in Montgomery v. De Simone, 159 F.3d at 126. In Montgomery, the plaintiff Rosemary Montgomery was arrested and charged with speeding, drunk driving, and refusing to take a breathalyser test. Id. at 123. At her municipal hearing, she introduced evidence that she was not drunk or speeding, and that at the time of her arrest, the arresting officer had propositioned her. Id. at 122-23. Although a municipal judge found her guilty, later the Superior Court of New Jersey, in a trial *de novo*, reversed the convictions. Id. at 123. After her convictions were overturned, she brought an action against the arresting officer in the United States District Court for

16

false arrest and false imprisonment.  Id.  The District Court ruled that her claims accrued at her arrest and were time-barred by the statute of limitations.  Id.

In affirming the dismissal, this Court explained that "[i]t is axiomatic that under federal law, which governs the accrual of section 1983 claims, the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action. . . .  Accordingly, under Gentry, [sic] the two-year limitation period for Montgomery's section 1983 false arrest and false imprisonment claims began to run on September 30, 1992, the night of Montgomery's arrest and detention."  Id. at 126 (internal quotation marks omitted).  In a footnote, we explained that Montgomery's claim was not subject to the Heck accrual rule:

> Montgomery argues that under Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), these claims only accrued after her criminal charges were resolved in her favor.  In Heck, the Court held that a section 1983 claim for damages attributable to an unconstitutional conviction or sentence does not accrue until that conviction or sentence has been invalidated.  Heck, 512 U.S. at 489-90, 114 S.Ct. 2364.  The Court also noted, however, that if a successful claim would not demonstrate the invalidity of any outstanding criminal judgment, it should be allowed to proceed.  Id. at 487, 114 S.Ct. 2364.  Because a conviction and sentence may be upheld even in the absence of probable cause for the initial stop and arrest, we find

17

that Montgomery's claims for false arrest and false imprisonment are not the type of claims contemplated by the Court in Heck which necessarily implicate the validity of a conviction or sentence. See Mackey v. Dickson, 47 F.3d 744, 746 (5th Cir.1995) (stating that "[i]t is well established that a claim of unlawful arrest, standing alone, does not *necessarily* implicate the validity of a criminal prosecution following the arrest."). Accordingly, we read Heck to be consistent with our determination that Montgomery's false arrest and false imprisonment claims accrued on the night of her arrest.

Montgomery, 159 F.3d at 126 n.5.

Gibson's Complaint lists multiple Fourth Amendment claims[9] including claims that Troopers Pennypacker and Reilly violated his rights by detaining and arresting him without probable cause and falsely imprisoning him. We

---

[9]    Gibson claims that the Troopers violated the Fourth Amendment by:
– Detaining Plaintiff without probable cause;
– Searching and seizing the car Plaintiff was in without probable cause;
– Searching Plaintiff without probable cause;
– Arresting Plaintiff without probable cause;
– Falsely imprisoning Plaintiff;
(Appellant App. at A-101.)

18

view these claims as claims of false arrest or imprisonment. See Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998) ("[A]llegations that a warrantless arrest or imprisonment was not supported by probable cause advanced a claim of false arrest or imprisonment . . . ."). Montgomery, 159 F.3d at 126 n.5, states that "[b]ecause a conviction and sentence may be upheld even in the absence of probable cause for the initial stop and arrest, . . . claims for false arrest and false imprisonment are not the type of claims contemplated by the Court in Heck." We view this language as sufficient to clearly exclude Gibson's Fourth Amendment claims of false imprisonment, and arrest and detention without probable cause from the Heck deferred accrual rule.

Other circuits have taken a position similar to our decision in Montgomery. See Beck v. City of Muskogee Police Dep't, 195 F.3d 553, 558 (10th Cir. 1999) (holding that arrest, interrogation, and search and seizure claims accrue when they actually occur and Heck does not affect them because ultimate success on them would not necessarily question the validity of a conviction); Simmons v. O'Brien, 77 F.3d 1093, 1095 (8th Cir. 1996) (the admission of a coerced confession is similar to the admission of illegally seized evidence which does not necessarily imply the invalidity of a conviction, thus a cause of action accrues immediately).[10]

---

[10]    Gibson argues that we should engage in a fact-intensive analysis of each of his claims to determine if they would necessarily imply that his underlying conviction is unlawful. To

19

be certain, some courts have engaged in a fact-intensive analysis of each claim. Wiley v. City of Chicago, 361 F.3d 994, 997 (7th Cir. 2004) ("Heck may in fact occasionally bar a civil rights claim premised on a false or wrongful arrest."); Ballenger v. Owens, 352 F.3d 842, 846 (4th Cir. 2003) (holding on facts similar to this case that when evidence seized in violation of the Fourth Amendment is the only evidence underlying a conviction, a successful civil challenge would necessarily imply the invalidity of the conviction); Hughes v. Lott, 350 F.3d 1157, 1161 (11th Cir. 2003); Harvey v. Waldron, 210 F.3d 1008, 1015 (9th Cir. 2000); Covington v. City of New York, 171 F.3d 117, 119 (2d Cir. 1999) (supporting a fact-based inquiry); Hudson v. Hughes, 98 F.3d 868, 872 (5th Cir. 1996) (plaintiff may not sue for an unlawful seizure if success would imply that the only evidence of the crime must be suppressed).

We did not engage in such a fact-intensive analysis in Montgomery v. De Simone, and we note that the Tenth Circuit expressly rejected such an approach in Beck v. City of Muskogee Police Dep't, 195 F.3d 553, 559 n.4 (10th Cir. 1999). Moreover, the fact-intensive approach would require us to answer difficult questions about what might have happened in lower court criminal proceedings. Heck prohibits civil actions which would question the validity of underlying criminal convictions and we are not inclined to do that in order to determine whether or not Heck is applicable.

Even if we were to adopt the fact-intensive analysis Gibson argues for, we could not conclude that exclusion of the evidence in this case would *necessarily* have invalidated Gibson's underlying state-court conviction. We cannot say what

20

After a thorough review of Heck, I conclude that Gibson's Fourth Amendment claims that he was searched and the car was searched and seized without probable cause are not subject to the Heck deferred accrual rule because they do not necessarily imply that Gibson's underlying state court conviction was unlawful. Heck, 512 U.S. at 487. Heck was an attempt by the Supreme Court to reconcile federal habeas corpus law with § 1983 civil claims. In Preiser v. Rodriguez, 411 U.S. 475, 500 (1972), a forerunner of Heck, the Supreme Court rejected the premise that a person could circumvent federal habeas corpus exhaustion requirements by merely seeking injunctive relief in a § 1983 action. Preiser "held that habeas corpus is the exclusive remedy for a state prisoner who

---

other evidence of guilt may have been present or whether there may have been a valid reason for stopping the vehicle other than race. The Supreme Court in Heck noted the possible applicability of other doctrines such as independent source, inevitable discovery, and harmless error. Heck, 512 U.S. at 487 n.7.

We have before us only nine pages of the trial court record and on this record we are unable to determine what caused the police to stop the vehicle. In particular, it is difficult to support conclusion in Judge Fuentes's Opinion that the only evidence supporting the criminal conviction was obtained as a result of an unlawful racial profiling stop. In fact, at oral argument counsel suggested that the car in which Gibson was traveling violated the motor vehicle code.

21

challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." Heck, 512 U.S. at 481. However, Preiser left open the question of what happens when a person seeks only monetary relief in a § 1983 suit, but would nonetheless demonstrate the invalidity of his or her conviction if successful. Id. Heck dealt with this question.

In Heck, the Court specified that it was operating at the intersection of the Civil Rights Act and the federal habeas corpus statute, id. at 480, as it addressed "the question posed by § 1983 damages claims that do call into question the lawfulness of conviction or confinement," but do not seek equitable relief, id. at 483. Accordingly, we doubt that the Court had Fourth Amendment claims in mind when it spoke of claims that "would necessarily imply the invalidity of [a] conviction or sentence." *Id.* at 487. We say this because although habeas corpus claims may be premised on many different constitutional violations, they may not be based upon violations of the Fourth Amendment "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim." Stone v. Powell, 428 U.S. 465, 482 (1976).

"'A claim of illegal search and seizure under the Fourth Amendment is crucially different from many other constitutional rights; ordinarily the evidence seized can in no way have been rendered untrustworthy by the means of its seizure and indeed often this evidence alone establishes beyond virtually any shadow of a doubt that the defendant is guilty.'" Id. at 490 (quoting Kaufman v. United States, 394

22

U.S. 217, 237 (1969) (Black J., dissenting)).  The exclusionary rule is a judicially created remedy for criminal cases meant to deter deprivations of the Fourth Amendment, but it is not itself a personal constitutional right of the aggrieved party.  United States v. Calandra, 414 U.S. 338, 348 (1974).  Therefore, as the Supreme Court has explained, "[w]hether the exclusionary sanction is appropriately imposed in a particular case, our decisions make clear, is 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.'"  United States v. Leon, 468 U.S. 897, 906 (1984) (quoting Illinois v. Gates, 462 U.S. 213, 223 (1983)).

A court in a civil action can decide that an individual was subjected to an illegal search or seizure without reaching the issue of whether the evidence found pursuant to that act should have been excluded from the criminal trial.  Although a successful Fourth Amendment civil claim might suggest that certain evidence should have been excluded at a criminal trial, that issue will never be reached in the civil context and therefore, the successful civil claim will not necessarily imply the invalidity of the underlying criminal conviction.[11]

_____

[11]    Judge Fuentes's Opinion ignores this point, and instead surmises that because Gibson's conviction rests solely on evidence discovered during his arrest, success on Gibson's false arrest claim would "necessarily imply" that he was improperly convicted.  Op. of Fuentes, J. at 10.  However, this does not square with the Supreme Court's admonition that the exclusionary rule is not a personal constitutional right.  Stone v.

23

Footnote six in the Heck opinion demonstrates a narrow exception to the general statement in footnote seven that a successful Fourth Amendment claim "would not *necessarily* imply that the plaintiff's conviction was unlawful," Heck, 512 U.S. at 487 n.7. As footnote six[12]

_____

Powell, 428 U.S. 465, 480-81 (1976). "[A] Fourth Amendment violation is 'fully accomplished' by the illegal search or seizure, and no exclusion of evidence from a judicial or administrative proceeding can 'cure the invasion of the defendant's rights which he has already suffered.' Pa. Bd. of Prob. & Parole v. Scott, 524 U.S. 357, 362 (1998) (quoting United States v. Leon, 468 U.S. 897, 906 (1984)). Thus, "the State's use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution." Id. It is therefore hard to understand how we can decide, in a collateral matter, that New Jersey's introduction of evidence obtained in violation of the Fourth Amendment would necessarily invalidate Gibson's conviction.

[12] Footnote 6 states:

An example of this latter category--a § 1983 action that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful--would be the following: A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest. (This is a common definition of that offense. See People v. Peacock, 68 N.Y.2d 675, 505 N.Y.S.2d 594, 496 N.E.2d 683 (1986);

24

explains, where a successful Fourth Amendment violation would actually "negate an element of the offense of which [the plaintiff] has been convicted" the claim undermines the *charge* under which the defendant was convicted, as contrasted with merely undermining *evidence* supporting the underlying conviction. Id. at 487 n.6. This narrow exception is not present in the case before us.

For the reasons stated above, I would affirm the dismissal of all claims seeking damages for violations of Gibson's Fourth Amendment rights as these claims are time-barred.[13]

---

> 4 C. Torcia, Wharton's Criminal Law § 593, p. 307 (14th ed. 1981).) He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concerning res judicata, see n.2, *supra,* the § 1983 action will not lie.

Heck, 512 U.S. at 486-87 n.6.

[13] I am troubled by the statement in Judge Fuentes's Opinion that, "Viewing the evidence in the light most favorable to Gibson, his car was stopped because of a pattern and practice of racial profiling, not because police had reasonable suspicion to believe a crime was being committed." Op. of Fuentes, J. at 9. The record is incomplete at this point and the question of

25

## B.  Fourteenth Amendment Claims

Gibson also challenges the District Court's dismissal of his claim in Count One that Troopers Pennypacker and Reilly subjected him to racially selective law enforcement practices in violation of the Equal Protection Clause of the Fourteenth Amendment.[14]  This requires a wholly different

whether Gibson's car was stopped for racially motivated reasons is completely distinct from the question of whether the police had probable cause for the stop.  Whren v. United States, 517 U.S. 806, 813 (1996).  The constitutional reasonableness of a traffic stop does not depend on the intent of the officers involved and therefore, the officers' racially discriminatory motivations cannot invalidate an objectively reasonable stop.  Id.  As long as the officers had probable cause for believing that a traffic violation occurred, the stop was reasonable.  Id. at 810.

Furthermore, this issue appears to have been already litigated at the state court level.  "State courts unquestionably have power to render preclusive judgments regarding the Fourth Amendment's prohibition of unreasonable searches and seizures."  Linnen v. Armainis, 991 F.2d 1102, 1108 (3d Cir. 1993).  Indeed, even if the state court was wrong in its determination on those Fourth Amendment issues, Gibson is still precluded from relitigating the issue.  18 C. Wright, A. Miller, & E. Cooper, Jurisdiction and Related Matters § 4416.

[14]  Section One of the Fourteenth Amendment states in relevant part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the

analysis.

Relying on Whren v. United States, 517 U.S. 806 (1996), the District Court reasoned that Gibson's claim for selective enforcement is not subject to the Heck deferred accrual rule because success on this claim would not necessarily have called into question his conviction. In Whren, 517 U.S. at 813, the Supreme Court held that police can temporarily detain a motorist when they have probable cause to believe that he violated a traffic ordinance, even if the police have some other motivation to stop the motorist. However, the Court in Whren expressly limited its analysis to the Fourth Amendment, and acknowledged that "the Constitution prohibits selective enforcement of the law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment." Id.

As we explained in Carrasca v. Pomeroy, 313 F.3d 828, 836 (3d Cir. 2002), "[t]he fact that there was no Fourth Amendment violation does not mean that one was not discriminatorily selected for enforcement of a law. Plaintiffs'

---

United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. Amend. XIV, § 1.

equal protection claims under the Fourteenth Amendment require a wholly separate analysis from their claims under the Fourth Amendment." (internal citations omitted.)

Whren and Carrasca stand for the proposition that, even though the Fourth Amendment reasonableness standard is not influenced by the subjective intentions of the person making the search or seizure, if a person can demonstrate that he was subjected to selective enforcement in violation of his *Equal Protection* rights, his conviction will be invalid.[15] United States v. Berrigan, 482 F.2d 171, 174 (3d Cir. 1973) ("[A]ny 'systematic discrimination' in enforcement . . . , or 'unjust and illegal discrimination between persons in similar circumstances,' . . . violates the equal protection clause and renders the prosecution invalid."). Because a successful claim of selective enforcement under the Fourteenth Amendment Equal Protection Clause would have necessarily invalidated Gibson's conviction, under the Heck deferred accrual rule the statute of limitations did not begin to run until his sentence was vacated and this claim is not untimely. See Kramer v. Village of North Fond du Lac, 384 F.3d 856, 862 (7th Cir.

---

[15] The Appellees miss the point of Gibson's argument in their suggestion that success on a selective enforcement claim would only imply the invalidity of prosecutions for traffic violations. (Appellee Brief at 31.) Gibson's allegations are that the racial profiling was part of an invidious system of discriminatory law enforcement which selectively targeted minorities for drug crimes. The traffic stops were only a vehicle for those efforts.

28

2004) (recognizing that the <u>Heck</u> deferred accrual rule applies to Fourteenth Amendment equal protection claims); <u>Portley-El v. Brill</u>, 288 F.3d 1063, 1067 (8th Cir. 2002) (stating that an equal protection claim is a direct attack on the validity of a disciplinary decision).

It appears that defendants do not raise a qualified immunity defense to Gibson's Fourteenth Amendment claims. Furthermore, it has long been a well-settled principle that the state may not selectively enforce the law against racial minorities. <u>Yick Wo v. Hopkins</u>, 118 U.S. 356, 373-74 (1886); <u>Berrigan</u>, 482 F.2d at 174 (3d Cir. 1973). Thus, even assuming, arguendo, that defendants raised the issue, we deny Troopers Pennypacker and Reilly qualified immunity with regard to Gibson's Fourteenth Amendment Equal Protection claim, and this claim may proceed.

## C. <u>Denial of Access to the Courts</u>

Gibson's denial of access to the courts claims in Count One are also brought under 42 U.S.C. § 1983, and therefore we must again identify the constitutional deprivation and the impermissible state action implicated in these claims. 42 U.S.C. § 1983; <u>Basista</u>, 340 F.2d at 79. The Supreme Court has recognized that a constitutional right to effectively use the courts has been found in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses. <u>See</u> <u>Christopher v. Harbury</u>, 536 U.S. 403, 415 n.12 (2002). Asserting this right, wherever it is grounded, a plaintiff can

29

seek relief for "loss or inadequate settlement of a meritorious case, . . . the loss of an opportunity to sue, . . . or the loss of an opportunity to seek some particular order of relief." Id. at 414.

Denial of access claims generally fall into two categories. Id. at 412-13. The first type of claim alleges that some official action is currently preventing the plaintiff from filing a suit at the present time. Id. at 413. The object of such a claim is to remove the barrier so that the plaintiff can pursue the separate claim for relief. Id. In these cases, the constitutional deprivation is demonstrated by the very fact that the plaintiff cannot presently pursue his underlying case until the frustrating condition is removed.

In the second category of cases, the plaintiff looks backward and alleges that some past wrongful conduct influenced a litigation opportunity such that the litigation "ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." Id. at 414 (footnotes omitted). In these cases, because the action was never pursued, it is often not as clear that the defendant's wrongful conduct prevented the plaintiff from pursuing or defending a claim, or that he is still foreclosed from accessing the courts. Therefore, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the Complaint, just as much as allegations must describe the official acts frustrating the litigation. It follows, too, that when the access claim (like this one) looks backward, the Complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." Id. at 415. When a denial of

30

access claim involves a state's suppression of evidence that is material to a criminal trial, the claim does not accrue until the conviction is invalidated. See Smith v. Holtz, 87 F.3d 108, 112 (3d. Cir. 1996). The parties both agree that this case implicates only "backward-looking" types of claims. (Appellant Brief at 27-28; Appellee Brief at 36.)

Gibson's "backward-looking" denial of access claims are based on two separate alleged litigation opportunities. The first was Gibson's criminal trial in which he claims he was unable to mount an effective defense because the Troopers did not disclose exculpatory information. The second involves his inability to pursue effective post-conviction relief actions that would have ended his incarceration at an earlier date because the Attorney General defendants did not disclose exculpatory evidence. We address each in turn.

### 1. The Criminal Conviction

Gibson argues that Troopers Pennypacker and Reilly violated his rights by suppressing exculpatory evidence related to his conviction. (Appellant Brief at 11.) Gibson attempts to base his denial of access claim on the disclosure requirements set forth in Brady v. Maryland, 373 U.S. 83 (1963), and its progeny. In Brady, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. The prosecutor's duty to disclose extends beyond

31

the information that he or she possesses, to include information in the hands of police investigators working on the case. <u>Kyles v. Whitley</u>, 514 U.S. 419, 421-22 (1995). According to Gibson, because the defendants failed to disclose exculpatory material evidence to the prosecutor or the defendant, they violated the mandate of <u>Brady</u>, and can be held liable under § 1983.

Gibson's approach is somewhat flawed because the <u>Brady</u> duty to disclose exculpatory evidence to the defendant applies only to a prosecutor. "The <u>Brady</u> rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur." <u>United States v. Bagley</u>, 473 U.S. 667, 675 (1985) (footnote omitted). As the Supreme Court made clear, a prosecutor plays a special role within the adversarial process:

> Within the federal system, for example, we have said that the United States Attorney is "the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." <u>Berger v. United States</u>, 295 U.S. 78, 88 (1935).

<u>Strickler v. Greene</u>, 527 U.S. 263, 281 (1999). This "special status" underpins the <u>Brady</u> rule and explains why the duty of

32

disclosure rests squarely on the shoulders of the prosecutor. Id.

A prosecutor is the "architect" of the criminal proceeding and must "comport with standards of justice" when acting on behalf of the state. Brady, 373 U.S. at 88. The prosecutor has a responsibility not just to disclose what he or she knows, but to learn of favorable evidence known to others acting on the government's behalf, weigh the materiality of all favorable evidence and disclose such evidence when it is reasonably probable that it will affect the result of the proceedings. Kyles, 514 U.S. at 437. The police are not equipped to perform this role and, accordingly, the Court has refused to "substitute the police for the prosecutor, and even for the courts themselves, as the final arbiters of the government's obligation to ensure fair trials." Id. at 438.

However, Gibson also alleges that the defendants failed to inform the prosecutor of the exculpatory information. (Appellant Brief at 11.) Several circuits have recognized that police officers and other state actors may be liable under § 1983 for failing to disclose exculpatory information to the prosecutor. McMillian v. Johnson, 88 F.3d 1554, 1567 (11th Cir. 1996), amended 101 F.3d 1363 (11th Cir. 1996); Walker v. City of New York, 974 F.2d 293, 299 (2d Cir. 1992); Geter v. Fortenberry, 849 F.2d 1550, 1559 (5th Cir. 1988). We agree.

Although Brady places the ultimate duty of disclosure on the prosecutor, it would be anomalous to say that police officers are not liable when they affirmatively conceal

33

material evidence from the prosecutor. In this case, Gibson alleges that the Troopers suppressed the extent of their impermissible law enforcement tactics, and had that information been available, he would have been able to impeach several witnesses and possibly could have halted the entire prosecution. We think that Gibson states an actionable § 1983 claim against the Troopers for interference with his Fourteenth Amendment due process rights.

However, we also realize that this duty on the part of the Troopers was not clearly established at the time of Gibson's prosecution in 1994. As this Court explained:

> Where a challenged police action presents a legal question that is "unusual and largely heretofore undiscussed," id. at 429, or where there is "at least some significant authority" that lends support of the police action, Leveto, 258 F.3d at 166, we have upheld qualified immunity even while deciding that the action in question violates the Constitution. On the other hand, the plaintiff need not show that there is a prior decision that is factually identical to the case at hand in order to establish that a right was clearly established.

Doe v. Groody, 361 F.3d 232, 243 (3d Cir. 2004)

Although this Court held in United States v. Perdomo, 929 F.2d 967, 970 (3d Cir. 1991), that evidence in the hands of the police could be imputed to the prosecutor, the Supreme

34

Court did not settle this matter until 1995 when it decided Kyles v. Whitley, 514 U.S. at 437 ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."). More importantly, the related duty of the police to disclose information to the prosecutor was not widely addressed until later. Even in 2000, this Court was only able to *assume* that police officers "have an affirmative duty to disclose exculpatory evidence to an accused if only by informing the prosecutor that the evidence exists." Smith v. Holtz, 210 F.3d 186, 197 n.14 (3d Cir. 2000).[16] Because such a right was not clearly established in

---

[16] In Smith v. Holtz, 210 F.3d 186, 197 n.14 (3d Cir. 2000), this Court was faced with a similar question as the one before us. Avoiding the question of whether investigating police officers have an affirmative duty to disclose exculpatory evidence, this Court noted:

> Although the affirmative duty to disclose is placed upon the prosecutor, we will nonetheless assume for the purposes of this appeal that investigating police officers also have an affirmative duty to disclose exculpatory evidence to an accused if only by informing the prosecutor that the evidence exists. But see Kelly v. Curtis, 21 F.3d 1544, 1552 (11th Cir. 1994). We will further assume that a § 1983 claim alleging a due process violation under Brady can, therefore, be asserted against police officers. See McMillian v. Johnson, 88 F.3d 1554, 1567 n. 12 (11th Cir. 1996), amended, 101 F.3d 1363 (11th Cir. 1996).

35

this Circuit at the time of Gibson's conviction, Troopers Pennypacker and Reilly are entitled to qualified immunity with regard to their failure to inform the prosecutor of <u>Brady</u> material.

## 2. Civil Claims and Post-Conviction Relief

Gibson also alleges that the Attorney General defendants "failed to disclose exculpatory material to [Gibson] during the course of his incarceration and post-conviction criminal proceedings in the New Jersey courts and that their suppression of materials relating to racial profiling practices on the New Jersey Turnpike violated plaintiff's right of access to the courts" because Gibson was prevented from effectively pursuing post-conviction relief or a civil action before the full disclosure of the nature of the racial profiling was revealed in 2000. (Appellant Brief at 26.) We address the purportedly lost civil claims and the lost post-conviction relief claims separately.

Gibson failed to adequately describe the civil litigation opportunities that he claims he lost. "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the Complaint sufficient to give fair notice to a defendant." <u>Christopher</u>, 536 U.S. at 416 (internal citations omitted). Because Gibson's inadequate allegations do not allow us to decide whether his lost claims were ever available or still are available, we will uphold the dismissal of this part of his claim.

---

<u>Smith</u>, 210 F.3d at 197 n.14.

36

Gibson also claims that the defendants frustrated his efforts to obtain post-conviction relief that would have ended his incarceration at an earlier date. In his brief, he relies heavily on Brady, seeking to imply a duty on the defendants to come forward with exculpatory evidence even after his conviction and appeal. However, Gibson has pointed to no constitutional duty to disclose potentially exculpatory evidence to a convicted criminal after the criminal proceedings have concluded and we decline to conclude that such a duty exists. We also note that the actual prosecutors in Gibson's case are not named as defendants, and would have been immune if they had been so named. Imbler v. Pachtman, 424 U.S. 409, 427 (1976).

Without a duty to act, the defendants cannot be liable for failing to come forward with the exculpatory evidence. However, Gibson's Complaint as it relates to the Attorney General defendants does not simply allege that the defendants failed to come forward with exculpatory evidence, but that their actions obfuscated the real extent of racial profiling. "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." West v. Atkins, 487 U.S. 42, 49-50 (1988). Whether or not the Attorney General defendants had a duty under Brady is irrelevant to the question of whether they used their positions to perpetuate the discriminatory enforcement of laws and to obstruct those convicted as a result of the discriminatory enforcement from obtaining relief.

Gibson specifically alleges that, although the Attorney General defendants published the *Interim Report of the State*

37

*Police Review Team Regarding Allegations of Racial Profiling* in April 1999, the authors nevertheless "intentionally withheld and suppressed the overwhelming evidence they had gathered showing that profiling was an entrenched agency wide policy in the NJSP." (Appellant App. at A-85.) According to Gibson, the suppression of this evidence denied him the opportunity to obtain freedom for a number of years.

Although the complete information disclosed in 2000 which eventually led to Gibson's release would have been helpful earlier, we cannot say that the defendants *deprived* Gibson of his access to the courts. Although we recognize that there is generally no "state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right" in a § 1983 suit, Daniels v. Williams, 474 U.S. 327, 330 (1986), we adhere to the Supreme Court's teaching that not all acts are unconstitutional simply because of the result, see Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264-65 (1977) (requiring proof of an invidious discrimination purpose for a claim of racial discrimination under the equal protection clause). In Estate of Smith v. Marasco, 318 F.3d 497, 511 (3d Cir. 2003), we expressed our approval of the Sixth Circuit view that a denial of access claim is available where the state officials "*wrongfully and intentionally* conceal information crucial to a person's ability to obtain redress through the courts, and do so *for the purpose of frustrating that right*, and that concealment and the delay engendered by it substantially reduce the likelihood of one's obtaining the relief to which one is otherwise entitled." (quoting Swekel v. City of River

38

Rouge, 119 F.3d 1259, 1262-63 (6th Cir.1997)) (emphasis added). Gibson alleged no facts that would establish that the actions of the Attorney General defendants in publishing the 1999 *Interim Report* were directed at denying relief to people like Gibson.[17] The fact that the Attorney General defendants' actions had the unfortunate result of perpetuating his incarceration until 2000 is insufficient under the circumstances to establish a cause of action. Consequently, Gibson's claim against the Attorney General defendants was properly dismissed.

## D. The Failure to Train Claim

Gibson alleges in Count One that the NJTA had notice of the NJSP's practice of racial profiling, tolerated the practice, failed to properly discipline, restrict or control employees, failed to take adequate precautions in hiring

---

[17] In his Reply Brief, Gibson points to only one allegation in his Complaint (¶ 61) that the defendants were acting purposefully when they "actively suppressed information that would have required either (1) Plaintiff's release from prison, or (2) a new trial based on the exculpatory information described herein and the misconduct of the State for suppressing same, as stated in Brady v. Maryland and similar state law." (Appellant Reply Brief at 14.) However, we read this paragraph as just a summary of Gibson's allegations that the government suppressed information and that the information would have been helpful. The allegation makes no claim that the government suppressed information in order to stifle Gibson's rights.

personnel, and intentionally suppressed known evidence of racial profiling that would have benefitted Gibson if brought during his prosecution or afterward. The District Court dismissed these claims noting that the action was time-barred and no facts were alleged to support these claims. Although Gibson challenges the Court's determination that no facts were alleged to support this claim, he fails to challenge the determination that the action is time-barred and we deem the issue waived. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 88 (3d Cir. 1987). Accordingly, we affirm the dismissal of the claims against the NJTA.

## IV. CONCLUSION

Consistent with this Opinion and the Opinion of Judge Fuentes, Gibson's claims in Count One under 42 U.S.C. § 1983 that the Troopers violated his Fourth Amendment rights, and unconstitutionally subjected him to selective enforcement of the laws in violation of the Equal Protection Clause of the Fourteenth Amendment may proceed. Since these claims in Count One may proceed, it follows that the 42 U.S.C. § 1983 conspiracy claim in Count Three and the 42 U.S.C. § 1985 conspiracy claim in Count Four may also proceed against Troopers Reilly and Pennypacker. We will also reinstate the state law claims. The dismissal of all the remaining claims is affirmed.

40

FUENTES, Circuit Judge, with whom BARRY, Circuit Judge, joins, writes the opinion of the Court with respect to Part III.A, from which Judge Van Antwerpen dissents. Judge Van Antwerpen writes the opinion of the Court with respect to Parts I, II, III.B-D, and IV.

We depart from our colleague's well-reasoned dissent with respect to Gibson's Fourth Amendment claims. Gibson claims that the Defendants violated his Fourth Amendment rights, when, as a consequence of racial profiling, he was stopped, searched, and arrested without probable cause (henceforth referred to as "Fourth Amendment claims"). We are asked to determine whether the statute of limitations began to run on Gibson's § 1983 complaint as to these claims when he was arrested in 1992, or when his conviction was overturned in 2002. We conclude that, under Heck v. Humphrey, 512 U.S. 477 (1994), the statute of limitations did not begin to run until 2002. Accordingly, Gibson's § 1983 complaint was timely filed in 2002, notwithstanding the fact that he was stopped, searched, and detained in 1992. We thus reverse the District Court's dismissal of Gibson's Fourth Amendment claims

.

### III. A. 1.  Background Relating to Fourth Amendment Claims

41

As noted by our colleague in dissent, Gibson was a passenger in the rear seat of an automobile that was stopped on the New Jersey Turnpike in October 1992 by two New Jersey State Troopers.[18] In a search of the car, the Defendant Troopers discovered drugs in the hatchback. Gibson was arrested and charged with various drug-related offenses. He was tried and convicted in April 1994. Five years after his conviction, and while serving his prison sentence, Gibson filed a petition for post-conviction relief in the New Jersey Superior Court, requesting discovery materials pertaining to racial profiling. His petition was denied, in part, because he did not present sufficient evidence to support the racial profiling claim and/or the probable illegality of his stop and arrest. In 1999, the New Jersey Attorney General issued an interim report regarding allegations of racial profiling. Additionally, in November 2000, new evidence regarding racial profiling practices in New Jersey was released in response to the various racial profiling challenges that were being raised at that time. Eventually, in April 2002, the New Jersey Attorney General filed a formal motion to vacate the convictions in 86 cases, including Gibson's case. The State determined that the defendants in these cases could make out a colorable claim of racial profiling. Based on the State's motion, Gibson's conviction was vacated, and all charges against him were dismissed. Gibson alleges that his conviction was overturned because the 1992 stop resulted from unlawful racial profiling and the practice of racial profiling by the state police had not been disclosed to him.

---

[18] Hereafter referred to as Gibson's car.

On November 14, 2002, more than ten years after his arrest, Gibson filed a § 1983 complaint claiming, as relevant here, a violation of his right to be free from unlawful search and seizure under the Fourth Amendment.

## 2. Discussion

In <u>Heck</u>, the Supreme Court held that to maintain a claim for damages for an "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, [or] declared invalid by a state tribunal." 512 U.S. at 486-87.

Under <u>Heck</u>, § 1983 claims for damages attributable to an unconstitutional conviction or sentence do not accrue until the conviction or sentence has been invalidated. <u>Id.</u> at 489-90. The Supreme Court directs district courts to determine in each case whether a particular § 1983 claim is deferred under <u>Heck</u>. <u>Id.</u> at 487 (requiring district courts to "consider whether a judgment in favor of the plaintiff would necessarily

43

imply the invalidity of his conviction or sentence"). The Court offered guidance on the question of when a § 1983 claim implies the invalidity of a conviction or a sentence, and is thus deferred, in two separate footnotes in Heck. In footnote six, the Court provided an example of when a defendant's § 1983 action would implicate the validity of his conviction. In the example, a person is convicted and sentenced for resisting arrest, an offense ordinarily requiring proof that the defendant intentionally prevented an officer from making a lawful arrest. The defendant then brings a § 1983 action for damages against the officer claiming the officer arrested him in violation of his Fourth Amendment right to be free from unreasonable seizures. Because this § 1983 claim would "negate an element of the offense of which he has been convicted," id. at 486 n.6, it does not accrue until the conviction or sentence has been invalidated.

In footnote seven, the Court offered an example of a § 1983 action which, even if successful, would not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, and thus, is not subject to deferral. The Court explained that a § 1983 action for damages based on an allegedly unreasonable search would not necessarily imply the invalidity of the conviction because of doctrines such as independent source, inevitable discovery, and harmless error. Id. at 487 n.7. The Court noted that in order for a § 1983 plaintiff to recover compensatory damages, he or she must prove both that the search was unlawful and that it caused actual compensable injury that "does not encompass the

44

'injury' of being convicted and imprisoned." Id. (emphasis in original). The Court emphasized however, that once a conviction was overturned, being convicted and imprisoned would qualify as an actionable § 1983 injury. Id.

Our decision in this case rests largely upon how we interpret footnote seven. At one point, there were two dominant approaches to the question of whether Fourth Amendment claims are subject to the Heck deferral rule. E.g., Harvey v. Waldron, 210 F.3d 1008, 1015 (9th Cir. 2000) (noting that "[t]here is a split in the circuits as to how Heck's footnote seven should be interpreted."); Shamaeizadeh v. Cunigan, 182 F.3d 391, 395 (6th Cir. 1999). Some courts had interpreted footnote seven as categorically excluding Fourth Amendment claims from the Heck deferred accrual rule. Under this approach, Fourth Amendment claims for unreasonable searches are not deferred under Heck. See, e.g., Nieves v. McSweeney, 241 F.3d 46, 52 (1st Cir. 2001) (holding that claims for false arrest and imprisonment under § 1983 accrue at the time of the arrest);[19] Copus v. City of Edgerton, 151 F.3d 646, 648 (7th Cir. 1998) (Fourth Amendment claims for unlawful searches or arrests can go

---

[19] It is significant to note, however, that the McSweeney Court acknowledged that "there may be rare and exotic circumstances in which a § 1983 claim based on a warrantless arrest will not accrue at the time of the arrest." McSweeney, F.3d at 53 n.4.

45

forward because they do not necessarily imply a conviction is invalid); Simmons v. O'Brien, 77 F.3d 1093, 1095 (8th Cir. 1996) (extending the categorical interpretation of footnote seven in the Fourth Amendment context "to Fifth Amendment claims challenging the voluntariness of confessions"); Datz v. Kilgore, 51 F.3d 252, 253 n.1 (11th Cir. 1995) (Heck does not defer a § 1983 claim because, even if a search was unconstitutional, the conviction might still be valid considering such doctrines as inevitable discovery, independent source, and harmless error).

In contrast, the majority of Courts of Appeals have read footnote seven as requiring a fact-based inquiry into whether a Fourth Amendment claim implies the invalidity of the underlying conviction. Under the fact-based approach, Fourth Amendment claims can be brought under § 1983, even without favorable termination, if the district court determines that success on the § 1983 claim would not necessarily imply the invalidity of the conviction. See, e.g., Baranski v. Fifteen Unknown Agents of the Bureau of Alcohol, Tobacco, and Firearms, 401 F.3d 419 (6th Cir. 2005) (conducting a fact-based inquiry as to whether the alleged Fourth Amendment injuries would necessarily imply the invalidity of the conviction); Hughes v. Lott, 350 F.3d 1157, 1161 (11th Cir. 2003) (same); Gauger v. Hendle, 349 F.3d 354, 361-62 (7th Cir. 2003) (same); Covington v. City of New York, 171 F.3d 117, 123 (2d Cir. 1999) (same); Martinez v. City of Albuquerque, 184 F.3d 1123, 1125 (10th Cir. 1999) (same); Woods v. Candela, 47 F.3d 545, 546 (2d Cir. 1995) (same);

46

Brooks v. City of Winston-Salem, 85 F.3d 178, 182-83 (4th Cir. 1996) (same). In situations where the evidence seized as a result of an unlawful search or arrest was used to convict the defendant, district courts examine the factual circumstances to determine whether doctrines such as independent source, inevitable discovery, or harmless error would have permitted the introduction of the evidence. See, e.g., Ballenger v. Owens, 352 F.3d 842, 846-47 (4th Cir. 2003); Hudson v. Hughes, 98 F.3d 868, 872 (5th Cir. 1996). Where it is impossible or improbable that such doctrines would have permitted the introduction of the evidence at issue in the criminal proceedings, the courts toll the statute of limitations as to the § 1983 claims until such time as the plaintiff's criminal proceedings have been resolved in his or her favor. See also, e.g., Baranski, 401 F.3d at 434; Wiley v. City of Chicago, 361 F.3d 994, 997 (7th Cir. 2004); Hughes, 350 F.3d at 1161 (examining circumstances of case to determine whether § 1983 action for unlawful search necessarily implied invalidity of conviction); Covington, 171 F.3d at 123 (noting that tolling rule differs in cases where conviction could be obtained from independent, untainted evidence, as opposed to cases where the evidence derived solely from unlawful arrest).

We note that the general trend among the Courts of Appeals has been to employ the fact-based approach. Indeed, even those Courts of Appeals which had interpreted footnote seven as categorically excluding Fourth Amendment claims from the Heck deferred accrual rule have utilized a fact-based

47

approach in some recent cases.  Compare Copus, 151 F.3d at 648 with Gauger, 349 F.3d at 361 and Wiley, 361 F.3d at 997 (Seventh Circuit); compare Datz v. Kilgore, 51 F.3d at 253 n.1 with Hughes, 350 F.3d at 1161 (Eleventh Circuit); compare Simmons, 77 F.3d at 1095 with Anderson v. Franklin County, Mo., 192 F.3d 1125, 1131 (8th Cir. 1999) (Eighth Circuit).

Irrespective of the general trend, in our view, the better reading of footnote seven is one that requires a fact-based inquiry.  Accordingly, in those cases in which a district court determines that success on the § 1983 claim would imply the invalidity of the conviction, the cause of action is deferred until the conviction is overturned.  Both the letter and spirit of Heck supports this conclusion.  Footnote seven of Heck clearly states that an action may lie with respect to an unreasonable search, not that it shall or will lie.  512 U.S. at 487 n.7.  The use of the permissive word "may" endorses the use of a fact-based approach because it precludes the automatic exemption of all Fourth Amendment claims from the Heck deferred accrual rule.  See John S. Buford, Note, When the Heck Does This Claim Accrue?  Heck v. Humphrey's Footnote Seven and § 1983 Damages Suits for Illegal Search and Seizure, 58 Wash. & Lee L. Rev. 1493, 1533 (2001); Paul D. Vink, Note, The Emergence of Divergence: The Federal Courts' Struggle to Apply Heck v. Humphrey to § 1983 Claims for Illegal Searches, 35 Ind. L. Rev. 1085, 1106-07 (2002).  Moreover, the policies cited in the Heck decision itself, which provide the proper context

48

within which to interpret footnote seven, lend additional support for the case-by-case approach. In rendering its decision, the Court noted that it "has long expressed . . . concerns for finality and consistency and has generally declined to expand opportunities for collateral attack." Heck, 512 U.S. at 484-85. The case-by-case approach actually best honors these values by identifying all those § 1983 challenges which, if successful, would imply the invalidity of existing convictions. See Buford, supra, at 1533-34; Vink, supra, at 1106.

Our colleague in dissent reaches a different conclusion based on Montgomery v. De Simone, 159 F.3d 120 (3d Cir. 1998), which considered whether the plaintiff's false arrest and imprisonment claims accrued on the day of the arrest or on the day of favorable disposition of the conviction. Plaintiff Rosemary Montgomery was arrested in September 1992 and charged with speeding, drunk driving, and refusing to take a breathalyzer test, id. at 122. She was found guilty of these charges and subsequently appealed her conviction. At a trial de novo in the Superior Court of New Jersey, in February 1994, she was acquitted of all charges. A year later, she filed a § 1983 suit in federal court claiming malicious prosecution, false arrest, and false imprisonment relating to the September 1992 traffic stop. The District Court entered summary judgment for the defendants, and Montgomery appealed. On appeal, we held that the two-year limitations period for the false arrest and false imprisonment claims began to run on the night of her arrest, and thus these claims were time-barred. In

49

discussing whether her cause of action arose when she was arrested in 1992 or when she was acquitted in 1994, we reasoned as follows:

> Montgomery argues that under [Heck] these claims only accrued after her criminal charges were resolved in her favor. In Heck, the Court held that a § 1983 claim for damages attributable to an unconstitutional conviction or sentence does not accrue until that conviction or sentence has been invalidated. Heck, 512 U.S. at 489-90. The Court also noted, however, that if a successful claim would not demonstrate the invalidity of any outstanding criminal judgment, it should be allowed to proceed. Id. at 487. Because a conviction and sentence may be upheld even in the absence of probable cause for the initial stop and arrest, we find that Montgomery's claims for false arrest and false imprisonment are not the type of claims contemplated by the Court in Heck which necessarily implicate the validity of a conviction or sentence. See Mackey v. Dickson, 47 F.3d 744, 746 (5th Cir. 1995) (stating that "it is well established that a claim of unlawful arrest, standing alone, does not necessarily implicate the validity of a criminal prosecution following the arrest."). Accordingly, we read Heck to be consistent with our determination that Montgomery's false arrest and false imprisonment claims accrued on the night of her arrest.

50

Id. at 126 n.5.

Our analysis of Gibson's claims differs from that of our colleague's because we read Montgomery differently. We do not dispute that, consistent with Heck, in some cases Fourth Amendment claims for false arrest begin to accrue at the time of arrest, not when the conviction is overturned. This occurs when a false arrest claim will not necessarily undermine a conviction or sentence. Thus, in Montgomery, we held that the plaintiff's false arrest claim was not deferred under Heck because the validity of her conviction did not depend upon probable cause for the stop. The evidence against Montgomery included the officer's testimony concerning her driving, and a radar measurement of her speed, neither of which was obtained as a result of the unlawful stop. Moreover, Montgomery refused to take the breathalyzer test which, under New Jersey law, gave rise to one of the charges on which she was convicted. Thus, in Montgomery, the plaintiff's § 1983 claim did not necessarily imply the invalidity of her conviction.

While it is true that some Fourth Amendment claims are not subject to deferral under Heck, we conclude that Heck does not set forth a categorical rule that all Fourth Amendment claims accrue at the time of the violation. This Court's determination that the plaintiff's false arrest claim in Montgomery qualified as an exception to the Heck deferral

51

rule, and thus accrued on the night of the arrest, does not mandate a blanket rule that all false arrest claims accrue at the time of the arrest.

Our dissenting colleague reasons that we are precluded from engaging in a fact-based inquiry as to the applicability of the Heck deferral rule because the Montgomery Court elected not to do so. We disagree with this interpretation. As we discussed above, the Montgomery Court considered, albeit briefly, the charges brought against Montgomery and the existing evidence supporting those charges. Based on its analysis, the Court reasoned that Montgomery's conviction could be upheld based on evidence obtained independently from the initial stop and arrest. Montgomery did not rule out a factual analysis of the evidence and it does not preclude us from applying the case-by-case approach here.

Our dissenting colleague criticizes the fact-based approach because it would involve district courts in "difficult questions about what might have happened in lower court criminal proceedings," (Dissenting Op. at n.10), thereby violating Heck's rule against questioning the validity of underlying criminal convictions. While our colleague is correct that the fact-based approach requires a district court to inquire into the nature of the criminal conviction and the antecedent proceedings, our approach does not in any way place the district court in the position of questioning the validity of that conviction. To the contrary, under Heck, a district court is required only to make a threshold

52

determination as to whether a plaintiff's § 1983 claim, if successful, would have the hypothetical effect of rendering the criminal conviction or sentence invalid.  If this threshold is satisfied, the district court's analysis is at an end, and the Heck deferred accrual rule is triggered. This approach is consistent with the dictates of Heck, and has been adopted by the majority of our sister circuits.  See e.g., Baranski, 401 F.3d at 419; Wiley, 361 F.3d at 997; Ballenger, 352 F.3d at 846-47; Hughes, 350 F.3d at 1161; Covington, 171 F.3d at 122.

In this case, Gibson was arrested for drug-related offenses after his car was stopped and searched in October 1992.  His conviction was overturned in April 2002.  Gibson's primary claims are that he was falsely arrested and falsely imprisoned in violation of the Fourth and Fourteenth Amendments.

Under New Jersey law, "[f]alse arrest or false imprisonment is the constraint of the person without legal justification." Fleming v. United Parcel Serv., Inc., 604 A.2d 657, 680 (N.J. Super. Ct. Law Div. 1992), aff'd per curiam, 642 A.2d 1029 (N.J. Super. Ct. App. Div. 1994) (citing Pine v. Okzewski, 170 A. 825, 826 (N.J. 1934)).  The tort of false arrest consists of: (1) an arrest or detention of the person against his will; (2) which is done without proper legal authority or legal justification.  See id.  If a judgment for

53

Gibson on his false arrest claim "would necessarily imply the invalidity of his conviction," Gibson would be barred from bringing his cause of action until his conviction was overturned in April of 2002. Heck 512 at 487. To prevail on his § 1983 claim for false arrest and imprisonment, Gibson would have to demonstrate that his arrest was without legal justification.

Viewing the evidence in the light most favorable to Gibson, his car was stopped because of a pattern and practice of racial profiling, not because police had reasonable suspicion to believe a crime was being committed. Generally, the absence of reasonable suspicion renders a stop unlawful, see Alabama v. White, 496 U.S. 325, 329-30 (1990), and evidence obtained from that unlawful stop excludable, see Wong Sun v. United States, 371 U.S. 471, 487-88 (1963). Gibson was arrested when the Defendant Troopers discovered drugs during the subsequent search of the car. These drugs were the only evidence supporting the drug charges against Gibson. Thus, success on his § 1983 claim for false arrest would "necessarily imply" that he was improperly convicted. As other courts have recognized, situations such as Gibson's – where the only evidence supporting the conviction is tainted by a possible constitutional violation that is the subject of a § 1983 action – are perhaps the quintessential example of when the Heck deferred accrual rule is triggered. E.g., Covington, 171 F.3d at 123 ("On the other hand, in a case where the only evidence for conviction was obtained pursuant to an arrest, recovery in a civil case based on false arrest

54

would necessarily impugn any conviction resulting from the use of that evidence.") (emphasis in original).[20]  Gibson is not seeking damages for physical injury, injury to reputation or seizure of property resulting from the improper search.  His alleged injury was based on evidence derived from an improper stop.  In other words, his actual, compensable injury was "the 'injury' of being convicted and imprisoned," which was not actionable until the conviction was overturned.  Heck, 512 U.S. at 487 n.7.

Therefore, under Heck, Gibson's Fourth Amendment claims were not cognizable and did not accrue until his conviction was invalidated in April 2002.  Thus, these claims, when filed in November 2002, were raised well within the

---

[20]  In dissent, our colleague states that even under a fact-based approach, he still could not conclude that the exclusion of the evidence in this matter would necessarily have invalidated Gibson's underlying state criminal conviction.  (Dissenting Op. at n.10) ("We cannot say what other evidence of guilt may have been present or whether there may have been a valid reason for stopping the vehicle other than race.").  But the record belies that concern, as it is clear that the only evidence supporting the criminal conviction was obtained as a result of the unlawful stop based on racial profiling and there is nothing in the record indicating that an exception to the exclusionary rule would apply.  Indeed, counsel for the defendants conceded as much during the oral arguments before us.

two-year statute of limitations.[21]  We thus reverse with respect to this issue.

<hr/>

[21]  As an aside, even if Gibson's claim had accrued in 1992, his cause of action may also be subject to tolling under New Jersey law on equitable grounds.  A New Jersey State Court had already determined in 1994 that he did not have sufficient evidence to support a claim of racial profiling.  Sufficient evidence came when the New Jersey Attorney General proposed dismissal of 86 cases tainted by racial profiling.  We need not decide this issue, however, as Gibson's case comes within the scope of Heck's deferral rule.  Id. at 489-90.